UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS RECEIVED

MAR 04 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**Plaintiff(s)**

KELLIE R. WATSON )
)                Judge:
)
)                MAR 0 4 2008
)
vs )                08CV1308
)                JUDGE MORAN
)                MAG. JUDGE DENLOW

**Defendant(s)**

**H.U.D.**
**Alphonso Jackson H.U.D.**
**Joseph P. Galvan H.U.D.**
**Beverly E. Bishop H.U.D.**
**Illinois Housing Authority (Provider)**
**City of Chicago (Provider)**
**Chicago Housing Authority (Provider)**
**Shelter Plus Care (Provider)**
**Bankier Apartments (Owners)**

## COMPLAINT UNDER THE CIVIL RIGHTS ACT, TITLE 42 SECTION 1983 AS ADMENDED

1. USC Title 42, Chapter 45 Fair Housing Act.
2. Title VIII Fair Housing and Equal Opportunity.
3. USC 42 chapter 3601-3619.
4. 740 ILCS 45 Crime Victims
5. 725 ILCS Rights OF Crime Victims.
6. 410 ILCS 250 Disability.
7. 775 ILCS 5 Human Rights Act
8. 310 ILCS 60 Federally Assisted Housing Act.
9. 310 ILCS 5,40,60,65,70,80,85,95,105.
10. Title 5 Municipal Code of Chicago.
11. Title 5 Municipal Code of Chicago Chapter 5-12.
12. Title 2 Municipal Code of Chicago Chapter 2-44.

**TO**: **SEE ATTACHED ADDRESS:**

**H.U.D.**                                                    **KELLIE R. WATSON**
**Alphonso Jackson H.U.D.**                          **P.O. BOX 18413**
**Joseph P. Galvan H.U.D.**                          **CHICAGO, ILLINOIS 60618**
**Beverly E. Bishop H.U.D.**
**Illinois Housing Authority (Provider)**
**City of Chicago (Provider)**
**Chicago Housing Authority (Provider)**
**Shelter Plus Care (Provider)**
**Bankier Apartments (Owners)**

Count 1.     The Plaintiff has not been properly served with a five day notice and that the issues of monies have not been paid in a timely manner.  An order of possession has been granted but stayed until 02/29/2008.

Count 2.      This is the fault of the Providers & HUD.

Count 3.     The Plaintiff has been granted a housing grant or voucher by Senator Peter Fitzgerald's office in October of 2003. In which HUD says doesn't exist.

Count 4.     The dwelling unit has not met the housing standards set by HUD.

Count 5.     That Bankier Apartments has not renewed the Plaintiffs lease since December of 2006

**Relief:**

To stop all Orders of Possession and Eviction.

To release information on the amount the where abouts of her Grant or Voucher.

The Plaintiff(S) demands that the case be tried by a jury.     [X] Yes              []No

## CERTIFICATE

By signing this Complaint, I certify that the facts stated in this Complaint are true to the best of my knowledge, information and belief. I understand that if this certification is not correct, I may be subject to sanctions by the Court.

Signed this 04 day of March, 2008

KELLIE R. WATSON Pro Se
P.O. BOX 18413
CHICAGO, ILLINOIS 60618
773-761-8033

H.U.D
Alphonso P. Jackson
451 7TH STREET
Washington , D.C. 2041

Josep P. Galvan
Beverly E. Bishop
H.U.D.
77 West Jackson Blvd
Chicago, Il. 60604

Terry E. Newman
IDPA-Illinois housing Authority
401 N. Michigan Ave.
Chicago, Il. 60611

Mayor  Richard J. Daley
121 N. Lasalle
Chicago, Il. 60602

Lewis A. Jordan
CHA Housing Authority
60 East Van Buren
Chicago, Il.  60605

Sheryl C. McGill
City of Chicago Shelter Plus Care
1615 West Chicago Ave.
Chicago, Il. 60622

Ms. M. Booth
Bankier Apartments & Rental
406 Green Street
Champaign, Il. 61820

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## MUNICIPAL DEPARTMENT / _____ DISTRICT

Banker Apts

_____
**Plaintiff(s)**

v.  Kellie Watson

_____
**Defendant(s)**

No. _____

## ORDER FOR POSSESSION

This cause coming on to be heard upon the complaint of the Plaintiff(s), Banker Apts

_____, and the issues thereof having been heard and

determined by _____ Court _____ and said _____ court _____ having found that the
              (court) (jury)           (court) (jury)

Plaintiff(s) _____ Banker Apts _____ is/are entitled to the possession of
the premises described herein.

**IT IS THEREFORE ORDERED AND ADJUDGED:**

1. That the Plaintiff(s) have and recover of and from the Defendant(s), Kellie Watson

_____, the possession of the following described premises:

    **Name:** _____ Kellie Watson

    **Address:** _____ 1318 W Lunt

    **Floor – Apt No.** _____ 301

    **City – State – Zip:** _____ Chicago, IL 60626

2. That the Plaintiff(s) have and recover of and from the Defendant(s), _____ N/A

the sum of _____ dollars and costs.

3. Enforcement of this judgment is stayed until _____ 2/29/08 _____
                                            (date)

I hereby certify the above to be correct.

**Dated:** _____

Leave to amend discovery

      (Seal of Clerk of Circuit Court)

*This order is the command of the Circuit Court and violation thereof is subject to the penalty of law.*

Clerk of the Circuit Court of Cook County, Illinois

Non suit Murry grant
304 A finding

**Atty. No.:** 11778

**Atty. Name:** _____ T. Meyer

**Atty. for Plaintiff (or) Pro Se Plaintiff:**

**ENTERED:**

Agreed _____

**Dated:** _____ Associate Judge Leonard Murray

**JAN 2 3 2008**

**Address:** 301 W Randolph #820

**City/State/Zip:** Chicago, IL 60606

**Telephone:** 312 5/6084

Judge     Circuit Court – 1981     Judge's No.

## DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

  

**United States Treasury** 15-51/000     P 184,642,897

Check No.

02 01 08   16   PHILADELPHIA, PA                    2053 84792290
2053 84792290 28043000 S1     G     P

Pay to
the order of   KYLE C WATSON                    90         SOC SEC
PO BOX 18413                                     FOR JAN
CHICAGO IL  60618-0413                                      $*****28*00



VOID AFTER ONE YEAR

⑩'20537⑩   ⑤000000518⑥ 84792 2900⑩ 080 208

---

 

**United States Treasury** 15-51/000     P 152,544,077

Check No.

02 01 08   12   PHILADELPHIA, PA                    2053 86584806
2053 86584806 28043000 S1     G     P

Pay to
the order of   KELLIE R WATSON                  06         SOC SEC
PO BOX 18413                                     FOR JAN
CHICAGO IL  60618-0413                                      $****629*00



VOID AFTER ONE YEAR

⑩'20537⑩   ⑤000000518⑥ 86584806 0⑩ 080 208

December 6, 2007

To: Carrie A. Kagawa
    Constituent Services Agent
    Office of Senator Barack Obama

Hello my name is Kellie R. Watson and I am writing in
regards to my Senatorial grant. There seems to be a
great deal of confusion as to the exact terms and
conditions of this grant. Let me begin by explaining
that not only am I under Social Security Disability, I
am also a Crime Victim and I have been declared
Federally indigent by a Federal Judge. My cases are
currently in the Northern District Court. I am a single
Mother who has been forced into being homeless, living
in hotels motels and shelters due to the fact that I am
innocent victim of a violent crime. (See attached)

As of October 2003 Senator Peter Fitzgerald assisted me
with obtaining a grant, due to my extreme and
extraordinary circumstances.(see attached) I am
currently in the Chicago Department of Human Services
Shelter Plus Care Program. They (Shelter Plus Care
Program) distribute the funds allocated through the
Housing and Urban Development Federal funds. However,
there seems to be problems with the several programs
that I qualify for under HUD.

On September 26th 2006 Bettye Williams (312-745-0418) my
caseworker and Sunny Jacobs (312-745-0015) Supervisor
made a home visit at 1pm. After looking through my
entire apartment we discussed the fact that my rent was
the highest in the program and that I would have to
start looking for other housing within the Shelter Plus
care requirements. When I was first approved for SPC
$950.00 was the limit to what I could rent. My current
rent is $1020.00 and my portion has gone from $148.00
2004-2005 to $150.00 for the year of 2005-2006. I
informed both Mrs. Williams and Mr. Jacobs that I was

not interested in moving and I felt that I was within
the Fair Market Rate for the area in Chicago in which
my son and I live. I also explained to them that I
needed this request be sent to me in writing. My
current lease has expired as of 12-11-2006.  I received
a letter from Janice Finney (312-744-2660) District
Manager on 12-4-2006 regarding Maximum Fair Market Rent
allowance (see attached) along with an addendum to my
lease. This addendum would allow my son and me to
remain in our current residence at the same amount of
rent until 3-11-2007. I refused to sign the addendum
for several reasons. The terms of the addendum were not
clearly spelled out. It was my understanding that my
Senatorial grant would cover all that my housing
requirements for the current year and each subsequent
year until I no longer need it.

On 12-12-2006 I wrote the Property Management Iris
Martinez (773-761-7059) and requested a 12 month lease.
According to the response I received, the Chicago
Department of Human Services was not approving funding
for more that 90 days. (See attached)

On December 19th 2006 I spoke with Sunny Jacobs
regarding the status of the addendum. We agreed to meet
on December 22nd 2006 at 11:30am. Due to the rainy
weather conditions, my Federal liaison, Mr. Hawkins
(773-737-3621), and I arrived at 11:45am. It was clear
from this meeting, which was also attended by Regina
Hodges (312-745-8516) Acting Social Worker Supervisor
for the City of Chicago Human Services Department that
extending my lease was not an option. It was also made
clear that the SPC Program was not responsible for
making sure that the apartment that I was renting was
up to standards. I was told to contact 311 and/or seek
legal actions in housing court. I presented a list from
the beginning of my lease of repairs that needed to be
completed. When I submitted the list to Bettey
Williams, Sunny Jacobs and Iris Martinez, only a few
items on the list were done. I was under the impression

that an apartment funded by HUD should always be keep up to standards. The City of Chicago's DHS SPC Program did nothing.

On January 12, 2007 I signed four rent request forms which were given to me by Janice Finney, the District Supervisor. Both Mr. Hawkins and I have been in constant contact with the owner, Mrs. Booth (217-637-5930). As of January 10th 2007 Mrs. Booth has no problem offering me another 12 month lease. She only needs to make sure there is no problem with my housing grant. Mrs. Booth also indicated that in the past 30 years of renting to tenants with some sort of housing voucher or grant, this was the first time there has been a problem. Is their another provider that could pay the funds from HUD to a landlord other than my current provider?

Unfortunately our address has been compromised by the City of Chicago Shelter Plus Care Program. My home address was used instead of the Federal Court Ordered Post Office Box. My son and I are not safe in this current location. My Liaison has located Jim Kinny (312-368-5340) of Rubloff Real Estate which has worked with others with severe issues. Mr. Kinny can place my son and I immediately in a home once he receives the Senatorial request. I have contacted the Midwest Regional Director Joseph P. Galvin (312-353-5680) as well as the Director of HUD Alphonso Jackson (202-708-0417) regarding this matter and still I can not resolve this issue.

This lack of all parties involved having all of the correct information is causing me a great deal of added stress and anxiety to my existing condition (Post Traumatic Stress Disorder). I am taxed enough with cases in both The United States Northern District Court, as well as The 7th Circuit Court of Appeals. For this reason, I am requesting a complete and detailed explanation of my Senatorial grant including all its

terms and conditions. I have not been able to obtain
this information on my own and that is the reason I
need your help.

Thank you for your time and consideration with this
matter. I do realize that Senator Obama is extremely
busy at this time, so I "Thank You" for being so nice,
kind and professional with me over the telephone. If
you have any questions or concerns Please feel free to
contact me.

Thank you,

Kellie R. Watson
773-761-8033

BARACK OBAMA
ILLINOIS

COMMITTEES:

HEALTH, EDUCATION, LABOR AND PENSIONS

HOMELAND SECURITY AND
GOVERNMENTAL AFFAIRS

FOREIGN RELATIONS

VETERANS' AFFAIRS

# United States Senate

WASHINGTON, DC 20510

December 7, 2007

Ms. Kellie R. Watson
1318 West Lunt Avenue
Chicago, Illinois 60626

Dear Ms. Watson:

Thank you for your continued patience with Senator Obama's Chicago office as we work on your
pending case.

I have submitted an inquiry to the Department of Housing and Urban Development on your
behalf. Our office will do its best to assure that you receive a response to your request.

Please allow thirty (30) to sixty (60) days for the agency to respond. Additionally, I will contact
you as soon as we receive any information concerning your case. If in the mean time you have
any questions, please feel free to contact our office at 312-886-3506.

Sincerely,

Carrie A. Kagawa
Constituent Services Agent

Office of U.S. Senator Barack Obama
230 S. Dearborn, Suite 3900
Chicago, IL 60604

WASHINGTON OFFICE
713 HART SENATE OFFICE BUILDING
WASHINGTON, DC 20510
OFFICE (202) 224-2854
FAX (202) 228-4260

CHICAGO OFFICE
230 S. DEARBORN
SUITE 3900
CHICAGO, IL 60604
OFFICE (312) 886-3506
FAX (312) 886-3514

SPRINGFIELD OFFICE
607 EAST ADAMS
SUITE 1520
SPRINGFIELD, IL 62701
OFFICE (217) 492-5089
FAX (217) 492-5099

MARION OFFICE
701 NORTH COURT STREET
MARION, IL 62959
OFFICE (618) 997-2402
FAX (618) 997-2850

MOLINE OFFICE
1911 52ND AVENUE
MOLINE, IL 61265
OFFICE (309) 736-1217
FAX (309) 736-1233

# Chicago Department of Human Services
## Shelter Plus Care Rental Payment Form

CHICAGO DEPARTMENT OF
**HUMAN SERVICES**



## Landlord Information

_BANKER APTS_
Realty Company

Landlord's Name (First, Last)

_406 GREEN ST._
Address

_CHAMPAIGN, IL.      61820_
City                                    Zip

_217  328 3770_
Telephone

## Client Information

_WATSON, KELLIE_
Client Name

_P O BOX 18413_
Address (location for which assistance is requested)

Chicago, Illinois            608 _18_

_354 - 60 - 7224_
Social Security Number

_773 761 8033_
Telephone

**Rental Information:**
Monthly Rent: _10 20 —_

CDHS Subsidy: _870 —_

Month of: _AUGUST, 2007_

Participants Share: _150 —_

**Client Information:**
Is there a current written lease?                    Yes        No
Is client compliant with service plan?             Yes        No
Start date in the program? _11/13/2003_        Date of last income verification  _1/3/06_
Has there been a change in income since that time    Yes     ~~No~~
Participant meets targeted disability of program     ~~Yes~~    No

**Client Certification:**                              **Grant #**

By signing this Shelter Plus Care certification form from the Chicago Department of Human Services I attest and agree to the following: the information provided is correct and complete; information on this application may be released to other parties for eligibility verification; I do not possess any undisclosed properties and that the apartment indicated above for which rent is requested is not owned by a family member or relative; the Chicago Department of Human Services will provide case management that may include site visits and telephone contact with my landlord and me for the period of assistance that this agreement represents; that I will abide with all program requirements; and that falsification of any information contained herein is a prosecutable offense.

X _Kellie Watson_                          _11-20-2007_
Client Signature                              Date

_S. Naldo_                                  _11-20-07_
Reviewer's Signature                          Date

_Marie Torrey_                              _11-20-2007_
District Manager                              Date

_____ **District Office Use Only** _____

Department Authorization Signature            Date
                                              Amount Approved: _____

| Fund | Dept. | Org | Appr. | Obj. | Rpt. Cat. |
|------|-------|------|-------|------|-----------|
| 869 | 53 | 2005 | 0140 | 0140 | |

Tracking Number: _____ - _____ - _____



# Chicago Department of Human Services
## Shelter Plus Care Rental Payment Form



<table>
<tr><td>

### Landlord Information

RADKILL APTS
Realty Company

_____
Landlord's Name (First, Last)

406 GLEN ST.
Address

CHAMPAIGN, IL.        61820
City                          Zip

217 328-3770
Telephone

</td><td>

### Client Information

WATSON, KELLIE
Client Name

PO BOX 18413
Address (location for which assistance is requested)

Chicago, Illinois        606 18

354 - 60 - 7224
Social Security Number

773 761-8033
Telephone

</td></tr>
</table>

**Rental Information:**
Monthly Rent: _1020 —_          **Month of:** _SEPTEMBER, 2007_

CDHS Subsidy: _870 —_          **Participants Share:** _150 —_

**Client Information:**

| | | |
|---|---|---|
| Is there a current written lease? | Yes | No |
| Is client compliant with service plan? | Yes | No |
| Start date in the program? 11/13/2003 | Date of last income verification | 1/3/06 |
| Has there been a change in income since that time | Yes | ~~No~~ |
| Participant meets targeted disability of program | ~~Yes~~ | No |

**Client Certification:**                    **Grant #**

By signing this Shelter Plus Care certification form from the Chicago Department of Human Services I attest and agree to the following: the information provided is correct and complete; information on this application may be released to other parties for eligibility verification; I do not possess any undisclosed properties and that the apartment indicated above for which rent is requested is not owned by a family member or relative; the Chicago Department of Human Services will provide case management that may include site visits and telephone contact with my landlord and me for the period of assistance that this agreement represents; that I will abide with all program requirements; and that falsification of any information contained herein is a prosecutable offense.

X _Kellie Watson_          _11-20-2007_
Client Signature                Date

_S. Jacob_          _11-20-07_
Reviewer's Signature          Date

_Jackie Frey_          _11-20-2007_
District Manager          Date

_____ **District Office Use Only** _____

_____          _____
Department Authorization Signature          Date
                              Amount Approved: _____

| Fund | Dept. | Org | Appr. | Obj. | Rpt. Cat. |
|------|-------|------|-------|------|-----------|
| 869 | 53 | 2005 | 0140 | 0140 | |

Tracking Number: _____  - _____  - _____

# Chicago Department of Human Services
## Shelter Plus Care Rental Payment Form



**CHICAGO DEPARTMENT OF HUMAN SERVICES**

## Landlord Information

_BANKIER APTS_
Realty Company

Landlord's Name (First, Last)

_406 GREEN ST._
Address

_CHAMPAIGN, IL        61820_
City                                    Zip

_217 328 3770_
Telephone

## Client Information

_WATSON, KELLIE_
Client Name

_P O BOX 18413_
Address (location for which assistance is requested)

Chicago, Illinois            606 _18_

_354 - 60 - 7224_
Social Security Number

_773 761 8033_
Telephone

**Rental Information:**

Monthly Rent: _1020—_

CDHS Subsidy: _870—_

Month of: _OCTOBER, 2007_

Participants Share: _150—_

**Client Information:**

| | | | |
|---|---|---|---|
| Is there a current written lease? | Yes | No | |
| Is client compliant with service plan? | Yes | No | |
| Start date in the program? _11/13/2003_ | Date of last income verification | _1/3/2006_ | |
| Has there been a change in income since that time | Yes | ~~No~~ | |
| Participant meets targeted disability of program | ~~Yes~~ | No | |

**Client Certification:**                                    **Grant #**

By signing this Shelter Plus Care certification form from the Chicago Department of Human Services I attest and agree to the following: the information provided is correct and complete; information on this application may be released to other parties for eligibility verification; I do not possess any undisclosed properties and that the apartment indicated above for which rent is requested is not owned by a family member or relative; the Chicago Department of Human Services will provide case management that may include site visits and telephone contact with my landlord and me for the period of assistance that this agreement represents; that I will abide with all program requirements; and that falsification of any information contained herein is a prosecutable offense.

X _Kellie Watson_
Client Signature                                    _11-20-2007_
                                                    Date

_S Jacob_
Reviewer's Signature                                _11-20-07_
                                                    Date

_District Manager_                                  _11-20-2007_
                                                    Date

_____ **District Office Use Only** _____

Department Authorization Signature                  Date
                                                    Amount Approved: _____

| Fund | Dept. | Org | Appr. | Obj. | Rpt. Cat. |
|---|---|---|---|---|---|
| 869 | 53 | 2005 | 0140 | 0140 | |

Tracking Number: _____ - _____



# Chicago Department of Human Services
## Shelter Plus Care Rental Payment Form



## Landlord Information

BANKIER APTS
Realty Company

Landlord's Name (First, Last)

406 GREEN ST.
Address

CHAMPAIGN, IL          61820
City                              Zip

217 328 3770
Telephone

## Client Information

WATSON, KELLIE
Client Name

P O BOX 18413
Address (location for which assistance is requested)

Chicago, Illinois          606 18

354 - 60 - 7224
Social Security Number

773 761 8033
Telephone

**Rental Information:**

Monthly Rent: 1020—

CDHS Subsidy: 870—

Month of: NOVEMBER, 2007

Participants Share: 150—

**Client Information:**

Is there a current written lease?                  Yes     No

Is client compliant with service plan?            Yes     No

Start date in the program? 11/13/2003

Has there been a change in income since that time     Yes   No

Participant meets targeted disability of program      Yes   No

Date of last income verification     1/3/2006

**Client Certification:**                              Grant #

By signing this Shelter Plus Care certification form from the Chicago Department of Human Services I attest and agree to the following: the information provided is correct and complete; information on this application may be released to other parties for eligibility verification; I do not possess any undisclosed properties and that the apartment indicated above for which rent is requested is not owned by a family member or relative; the Chicago Department of Human Services will provide case management that may include site visits and telephone contact with my landlord and me for the period of assistance that this agreement represents; that I will abide with all program requirements; and that falsification of any information contained herein is a prosecutable offense.

X  _Kellie Watson_                              11-20-2007
Client Signature                                Date

_S. Nalob_                                       11-20-07
Reviewer's Signature                            Date

_Paula Frary_                                    11-20-2007
District Manager                                Date

_____ **District Office Use Only** _____

Department Authorization Signature              Date

                                                Amount Approved: _____

| Fund | Dept. | Org | Appr. | Obj. | Rpt. Cat. |
|------|-------|------|-------|-------|-----------|
| 869  | 53    | 2005 | 0140  | 0140  |           |

Tracking Number: _____

# Chicago Department of Human Services
## Shelter Plus Care Rental Payment Form

**CHICAGO DEPARTMENT OF HUMAN SERVICES**



### Landlord Information

Bankier Apts

Realty Company

_____

Landlord's Name (First, Last)

406 Green St.

Address

Champaign, IL 61820

City                              Zip

217-328-3770

Telephone

### Client Information

WATSON, KELLIE

P.O. Box 18413

Address (location for which assistance is requested)

Chicago IL                     60618

Social Security Number        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

773-761-8033

Telephone

**Rental Information:**
Monthly Rent: $1020.⁰⁰

CDHS Subsidy: $870.⁰⁰

**Month of:** December 2007

**Participants Share:** $150⁰⁰

**Client Information:**

| | | |
|---|---|---|
| Is there a current written lease? | **[Yes]** No | |
| Is client compliant with service plan? | **[Yes]** No | |
| Start date in the program? 11-13-03 | Date of last income verification | 1-3-7 |
| Has there been a change in income since that time | Yes **(No)** | |
| Participant meets targeted disability of program | (Yes) No | |

**Client Certification:**                    Grant # 11

By signing this Shelter Plus Care certification form from the Chicago Department of Human Services I attest and agree to the following: the information provided is correct and complete; information on this application may be released to other parties for eligibility verification; I do not possess any undisclosed properties and that the apartment indicated above for which rent is requested is not owned by a family member or relative; the Chicago Department of Human Services will provide case management that may include site visits and telephone contact with my landlord and me for the period of assistance that this agreement represents; that I will abide with all program requirements; and that falsification of any information contained herein is a prosecutable offense.

Kellie Watson

Client Signature

11-20-2007

Date

Reviewer's Signature

11-20-07

Date

District Manager

11-20-07

Date

_____**District Office Use Only**_____

_____

Department Authorization Signature

_____

Date

Amount Approved: _____

| **Fund** | **Dept.** | **Org** | **Appr.** | **Obj.** | **Rpt. Cat.** |
|---|---|---|---|---|---|
| 869 | 53 | 2005 | 0140 | 0140 | _____ |

Tracking Number: _____ - _____ - _____

2448503

**CITY OF CHICAGO**
DEPARTMENT OF FINANCE
**OFFICE OF THE COMPTROLLER**
33 NORTH LASALLE STREET · SUITE 700 · CHICAGO, ILLINOIS · 60602

## CITY OF CHICAGO REMITTANCE ADVICE

FUND: 0869    VENDOR 50077121 B    WARRANT NO. **40865044**

NON-NEGOTIABLE INSTRUMENT

| DATE 01/25/2007 | INVOICE NO. 11401000915 | DEPT DEPARTMENT OF HUMAN SERVICES | VOUCHER NO. PV53075300506 | PO. RELEASE NO. | AMOUNT 870 00 |
|---|---|---|---|---|---|

PV53075300506    TOTAL:    *********870.00

DEPARTMENT OF FINANCE
COMPTROLLERS OI

---

THIS DOCUMENT HAS BLACK PRINTING OVER A LIGHT GREEN BACKGROUND ON WHITE PAPER

DATE: 02/13/2007    **TO THE TREASURER OF THE CITY OF CHICAGO**    SERIAL NUMBER    **40865044**

40865044

FUND
0869

VENDOR  50077121 B

2-439
710

TO THE ORDER OF:

******$870.00

**BANKIER APTS
& KELLIE WATSON
1615 W CHGO AV-CDHS/3RD FL
CHICAGO, IL 60622**

MAYOR

REVERSE SIDE HAS CITY SEAL WATERMARK.

CITY COMPTROLLER

COMPTROLLER'S OFFICE · DEPARTMENT OF FINANCE

⑈40865044⑈ ⑆071004394⑆    026⑈

Copy (Vendor)'                                                    Copy (Vendor)

**BANKIER APTS**

PV53075300506



### City of Chicago
### Office of City Comptroller
Room 700
33 N. LaSalle Street
Chicago, IL 60602

### Direct Payment Voucher

| Voucher Number | Voucher Total | Vendor Number | Page |
|---|---|---|---|
| PV53075300506 | 870.00 | 50077121 B | 1 |

**Remittance Address:**
BANKIER APTS
& KELLIE WATSON
1615 W CHGO AV-CDHS/3RD FL
CHICAGO, IL 60622

**Delivered To:**
DEPARTMENT OF HUMAN SERVICES

**Prepared By:**     C. BRYANT 6-8618

**Dept Approval Date:**     01/25/2007

**Vendor Invoice Number:**     11401000915          **Vendor Invoice Date:** 01/25/2007

2007 FEB. RENT FOR KELLIE WATSON PO BOX 18413

| Ln | Commodity / Description | Quantity | Unit of Meas. | Unit Cost | Total Cost |
|---|---|---|---|---|---|
| 1 | 59925   RENT SUBSIDY REIMBURSEMENT | | N | | 870.00 |
| | **Vendor Invoice Number 11401000915  Total:** | | | | **870.00** |
| | **Grand Total:** | | | | **870.00** |

**Accounting Information**

| Invoice | Ln | BFY | Fund | Cost Ctr | Appr | Accnt | Actv | Project | Rpt Cat | Genrl | Futr | Total Cost |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11401000915 | 1 | 006 | 0869 | 0532005 | 0140 | 220140 | 0000 | 00000000 | 06CY60 | 00000 | 0000 | 870.00 |
| **Grand Total:** | | | | | | | | | | | | **870.00** |

| Entered By | | **Department Approval** | **Department Approval** |
|---|---|---|---|
| Auditor's Approval | *Ron Dena 2/1/07* | I hereby certify that the invoices have not been previously vouchered and that the goods or services indicated were received and that the account is approved from appropriations as shown above. | I hereby certify that the invoices have not been previously vouchered and that the goods or services indicated were received and that the account is approved from appropriations as shown above. |
| Received By | | Authorized Signature        Date | Signature        Date |

2409352

**CITY OF CHICAGO**
**DEPARTMENT OF FINANCE**
**OFFICE OF THE COMPTROLLER**
39 NORTH LASALLE STREET - SUITE 700 - CHICAGO, ILLINOIS - 60602

## CITY OF CHICAGO REMITTANCE ADVICE

FUND: 0869     VENDOR 50077121 B                          WARRANT NO. **40825978**

NON-NEGOTIABLE INSTRUMENT

| DATE 10/19/2005 | INVOICE NO. 114-00792A | DEPT DEPARTMENT OF HUMAN SERVICES | VOUCHER NO. PV53065304675 | PO. RELEASE NO. | AMOUNT 870.00 |
|---|---|---|---|---|---|

PV53065304675          TOTAL:          *********870.00



DATE: 11/01/2006          **TO THE TREASURER OF THE CITY OF CHICAGO**          SERIAL NUMBER   **40825978**

40825978

FUND
0869

VENDOR   50077121 B          $\frac{2-439}{710}$

TO THE ORDER OF:

******$870.00

**BANKIER APTS**
**& KELLIE WATSON**
**1615 W CHGO AV-CDHS/3RD FL**
**CHICAGO, IL 60622**

MAYOR          CITY COMPTROLLER

REVERSE SIDE HAS CITY SEAL WATERMARK.

⑆40825978⑆ ⑆071004394⑆          026⑈

Copy (Vendor)                                                                    Copy (Vendor)

**BANKIER APTS**

PV53065304675



# City of Chicago
## Office of City Comptroller
Room 700
33 N. LaSalle Street
Chicago, IL 60602

## Direct Payment Voucher

| Voucher Number | Voucher Total | Vendor Number | Page |
|---|---|---|---|
| PV53065304675 | 870.00 | 50077121 B | 1 |

**Remittance Address:**
BANKIER APTS
& KELLIE WATSON
1615 W CHGO AV-CDHS/3RD FL
CHICAGO, IL 60622

**Delivered To:**
DEPARTMENT OF HUMAN SERVICES

**Prepared By:**    OSCAR L. WELLS

**Dept Approval Date:**    10/19/2006

**Vendor Invoice Number:**    114-00792A          **Vendor Invoice Date:** 10/19/2006

1318 W. LUNT NOV.2006

| Ln | Commodity / Description | Quantity | Unit of Meas. | Unit Cost | Total Cost |
|---|---|---|---|---|---|
| 1 | 59925   RENT SUBSIDY REIMBURSEMENT | | N | | 870.00 |
| **Vendor Invoice Number  114-00792A  Total:** | | | | | **870.00** |
| **Grand Total:** | | | | | **870.00** |

**Accounting Information**

| Invoice | Ln | BFY | Fund | Cost Ctr | Appr | Accnt | Actv | Project | Rpt Cat | Genrl | Futr | Total Cost |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 114-00792A | 1 | 006 | 0869 | 0532005 | 0140 | 220140 | 0000 | 00000000 | 06CY60 | 00000 | 0000 | 870.00 |
| **Grand Total:** | | | | | | | | | | | | **870.00** |

| Entered By | Department Approval | Department Approval |
|---|---|---|
| Auditor's Approval  10/26/06 | I hereby certify that the invoices have not been previously vouchered and that the goods or services indicated were received and that the account is approved from appropriations as shown above. | I hereby certify that the invoices have not been previously vouchered and that the goods or services indicated were received and that the account is approved from appropriations as shown above. |
| Received By | Authorized Signature          Date | Signature          Date |

2391794

**CITY OF CHICAGO**
DEPARTMENT OF FINANCE
**OFFICE OF THE COMPTROLLER**
33 NORTH LASALLE STREET · SUITE 700 · CHICAGO, ILLINOIS · 60602

## CITY OF CHICAGO REMITTANCE ADVICE

FUND: 0869    VENDOR 50077121 B                    WARRANT NO. **40808422**

NON-NEGOTIABLE INSTRUMENT

| DATE | INVOICE NO. | DEPT | VOUCHER NO. | PO. RELEASE NO. | AMOUNT |
|------|-------------|------|-------------|-----------------|--------|
| 09/26/2006 | 114-00755 | DEPARTMENT OF HUMAN SERVICES | PV53065305305 | | 870.00 |

PV53065305305        TOTAL:        *********870.00

*OFFICE · DEPARTMENT OF FINANCE*

*COMPTROLLF*

---

*COMPTROLLER'S OFFICE · DEPARTMENT OF FINANCE*

DATE: 10/13/2006            **TO THE TREASURER OF THE CITY OF CHICAGO**            SERIAL NUMBER **40808422**

                                                                40808422

FUND            VENDOR    50077121 B                            2-439
0869                                                            ─────
                                                                710

TO THE ORDER OF:                                                ******$870.00

**BANKIER APTS**
**& KELLIE WATSON**
**1615 W CHGO AV-CDHS/3RD FL**
**CHICAGO, IL 60622**



                        MAYOR                    CITY COMPTROLLER

ⁱⁱ⁺408084 2 2ⁱⁱ⁺  ⁱ:0 7 10043 94ⁱ:        0 26ⁱⁱ⁺

Copy (Vendor)                                                    Copy (Vendor)

**PV53065305305**

**BANKIER APTS**



### City of Chicago
### Office of City Comptroller
Room 700
33 N. LaSalle Street
Chicago, IL 60602

### Direct Payment Voucher

| Voucher Number | Voucher Total | Vendor Number | Page |
|---|---|---|---|
| PV53065305305 | 870.00 | 50077121 B | 1 |

| Remittance Address: | Delivered To: |
|---|---|
| BANKIER APTS<br>& KELLIE WATSON<br>1615 W CHGO AV-CDHS/3RD FL<br>CHICAGO, IL 60622 | DEPARTMENT OF HUMAN SERVICES<br><br>**Prepared By:**    N CRUZ 6-8696<br><br>**Dept Approval Date:**    09/26/2006 |

Vendor Invoice Number:    114-00755          Vendor Invoice Date: 09/26/2006


OCTOBER 2006 PO BOX 10413

| Ln | Commodity / Description | Quantity | Unit of Meas. | Unit Cost | Total Cost |
|---|---|---|---|---|---|
| 1 | 59925   RENT SUBSIDY REIMBURSEMENT | | N | | 870.00 |
| **Vendor Invoice Number 114-00755  Total:** | | | | | **870.00** |
| **Grand Total:** | | | | | **870.00** |

| Accounting Information | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Invoice | Ln | BFY | Fund | Cost Ctr | Appr | Accnt | Actv | Project | Rpt Cat | Genrl | Futr | Total Cost |
| 114-00755 | 1 | 006 | 0869 | 0532005 | 0140 | 220140 | 0000 | 00000000 | 06CY60 | 00000 | 0000 | 870.00 |
| **Grand Total:** | | | | | | | | | | | | **870.00** |

| Entered By | | Department Approval | Department Approval |
|---|---|---|---|
| Auditor's Approval | | I hereby certify that the invoices have not been previously vouchered and that the goods or services indicated were received and that the account is approved from appropriations as shown above. | I hereby certify that the invoices have not been previously vouchered and that the goods or services indicated were received and that the account is approved from appropriations as shown above. |
| Received By | | _____  _____<br>Authorized Signature         Date | _____  _____<br>Signature                 Date |

No. 104

# CHICAGO APARTMENT LEASE

**Tenant Ordinance Summary Attached**

**Unfurnished**

© SANFORD KAHN
Copyright 1981
180 N. LaSalle
All Rights Reserved
Revised February 2

| DATE OF LEASE | TERM OF LEASE | | MONTHLY RENT | SECURITY DEPOSIT |
|---|---|---|---|---|
| | **BEGINNING** | **ENDING** | $ 1,020.00 Rent | $ 1,020.00 |
| October 9, 2007 | August 1, 2007 | November 30, 2007 | $   55.00 Parking | |

## LESSEE

**NAME:**   Kellie R. Watson

**APT. NO.**   301

**ADDRESS OF PREMISES:**   1318 W. Lunt Avenue

**CITY:**   Chicago  IL  60626

## LESSOR

### IDENTIFICATION OF OWNER AND AGENTS

**Owner or Authorized Management Agent:**
Bankier Apartments

NAME

406 Green Street

ADDRESS

Champaign IL 61820  Ph (217) 328-3770

CITY                                          TELEPHONE NUMBER

**Person Authorized to Act on Behalf of Owner for Purpose of Service of Process and Receipting for Notices:**
Alex & Iris Martinez

NAME

1318 W. Lunt Ave. Apt.# 102

ADDRESS

Chicago  IL  60626  Ph (773) 761-7059

CITY                                          TELEPHONE NUMBER

### NOTICE OF CONDITIONS AFFECTING HABITABILITY

I hereby acknowledge that Lessor has disclosed any code violations, code enforcement litigation and / or compliance board proceedings during the previous 12 months for the apartment and common area and any notice of intent to terminate utility service, copies of which, if any, are attached to this Lease.

In consideration of the mutual agreements and covenants hereinstated, Lessor hereby leases to Lessee, and Lessee hereby leases from Lessor, for a priv dwelling, the Apartment designated above, together with the fixtures and appliances belonging thereto, for the above Term.

ADDITIONAL COVENANTS AND AGREEMENTS (if any).

Special Notation:

Parking is not included in rent.

**LESSEE**

_Kellie R. Watson_ 10-04-2007 (SEAL)

_Kyle C. Watson_ 10-04-2007 (SEAL)

**LESSOR**

_Iris Martinez_ (SEAL)

(SEAL)

## LEASE COVENANTS AND AGREEMENTS

**1. RENT:** Lessee shall pay to the Lessor or Lessor's agent the monthly rent set forth above on or before the first day of each and every month in advance at Lessor's address stated above or such other address as Lessor may designate in writing. The time of each and every payment of rent is of the essence of the Lease.

**2. LATE CHARGES:** The monthly rent shall be increased $10.00 per month for the first $500.00 in monthly rent plus five (5%) percent per month for any amount in excess of $500.00 in monthly rent if paid after the fifth of the month. Rent shall be considered received, if mailed, on the date of receipt.

**3. SECURITY DEPOSIT:** Lessee has deposited with Lessor the security deposit as set forth above, to be retained by Lessor to ensure that Lessee shall fully perform each and every term and obligation provided in this Lease. If Lessee fully performs each and every obligation as provided in this lease and pays all sums due to Lessor, then Lessor, after the Lessee has surrendered possession of the premises and has delivered the keys thereto, shall refund said deposit to Lessee, including interest as is provided by law. If Lessee has failed to perform or comply with any of the provisions in this Lease, then Lessor shall deduct any damages from the security deposit. The security deposit shall not be treated as an advance payment of rent, and Lessee may not apply the security deposit as rent.

**4. POSSESSION:** If Lessor cannot give Lessee possession on the date

repair and in a clean, sightly and healthy condition, Lessor or his age may replace the premises in the same condition of repair, sightliness a cleanliness as existed at the date of execution of this Lease; Lessee agrees pay Lessor for all expenses incurred by Lessor in replacing the premises that condition. Lessee shall not cause or permit any waste, misuse or negl to occur to the water, gas, utilities, or any other portion of the premises.

**8. USE OF PREMISES:** The premises shall be occupied solely residential purposes by Lessee and those persons listed in the Application for t Lease. Neither Lessee nor any other persons residing with or visiting Lessee sh have been convicted of a crime relating to illegal sexual conduct nor shall suff perform, or permit any act or practice that may damage the reputation of t building or be injurious to the building or the operation thereof, or be disturbi to other tenants, be illegal, immoral, or increase the rate of insurance on t building. Neither Lessee nor any occupant nor any guest of Lessee shall enga in any criminal activity including drug related activity on or near the premises ̈ shall they engage in any acts of violence or threats of violence or interfere w the health, safety or rights of other residents, employees or agents of Lessor, persons in the immediate vicinity of the premises. Lessee shall be responsible f the conduct of all occupants and persons visiting the Lessees unit.

**9. SUBLET OR ASSIGNMENT:** Lessee shall not sublet the premis or any part thereof, nor assign this Lease, without  in each case  prior writt

LAW OFFICES OF
LARRY J.MEYER

205 W. Randolph Suite 820
Chicago, Illinois 60606
(312) 346-0875 Fax (312) 346-1110
lmeyercollect@sbcglobal.net

AUGUST 1, 2007

KELLIE WATSON
1318 W LUNT AVE APT #301
CHICAGO, IL  60626

File # : 57-377

RE:    BANKIER APARTMENTS

ACCOUNT BALANCE:  **$2,176.00**

**This is an attempt to collect a debt and any information obtained will be used for that purpose.**

The above claim has been referred to this office for collection.

Pursuant to Public Law 95-109, unless you notify us within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid.  If you notify this office in writing within 30 days from receiving this notice, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of the judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Very truly yours,

*Larry J. Meyer*

LARRY J. MEYER

LJM/mgr

Landlord's Five Days' Notice
(Illinois)

NO. 32P
January, 2000

GEORGE E. COLE®
LEGAL FORMS

CAUTION: Consult a lawyer before using or acting under this form. Neither the publisher nor the seller of this form makes any warranty with respect thereto, including any warranty of merchantability or fitness for a particular purpose.

# LANDLORD'S FIVE DAYS' NOTICE

To Ms. Kellie Watson

You are hereby notified that there is now due the undersigned landlord the sum of Two Thousand One Hundred Seventy Six Dollars and 00 Cents, being rent for the premises situated in the City of Chicago, County of Cook and State of Illinois, described as follows, to wit: 1318 W. Lunt Ave. – Apt. 301 Chicago IL 60626

together with all buildings, sheds, closets, out-buildings, garages and barns used in connection with said premises.

And you are further notified that payment of said sum so due has been and is hereby demanded of you, and that unless payment thereof is made on or before the expiration of five days after service of this notice your lease of said premises will be terminated Iris Martinez is hereby authorized to receive said rent so due, for the undersigned.

Only FULL PAYMENT of the rent demanded in this notice will waive the landlord's right to terminate the lease under this notice, unless the landlord agrees in writing to continue the lease in exchange for receiving partial payment.

Dated this Twenty Five day of July , 20 07

By Iris Martinez

Landlord

Agent or Attorney

STATE OF ILLINOIS }
COUNTY OF **Cook** } SS.

AFFIDAVIT OF SERVICE—When served by a person not an officer.

**Iris Martinez** _____, being duly sworn, on oath deposes and

says that on the **Twenty Five** day of **July** _____, 20**07** he served the within notice

on the tenant named therein, as follows:*

(1) by delivering a copy thereof to the within named tenant. **Kellie Watson**

(2) by delivering a copy thereof to _____

a person above the age of thirteen years, residing on or in charge of the within described premises.

(3) by sending a copy thereof to said tenant by ** } certified } registered mail, with request for return of receipt from the addressee.

(4) by posting a copy thereof on the main door of the within described premises, no one being in actual possession thereof.

Subscribed and sworn to before me this

**25** day of **July** _____, 20**07** }   *Iris Martinez*

_____
Notary Public

*Strike out all paragraphs not applicable.
**Strike out word not applicable.

**FIVE DAYS' NOTICE**

vs.

Served the within notice, by delivering
a copy thereof to the within named:

_____ day of
_____ A. D. 20___

this_____

Fees     - $
Mileage  - $
Service  - $

**GEORGE E. COLE®
LEGAL FORMS**

FROM : BANKIER APARTMENTS     FAX NO. : 2173283787     Jun. 12 2007 02:38PM P2

# L E A S E   S T A T U S   R E P O R T

1318   301       08-11-2007
01/01/04   THRU   06/11/07

| | | | |
|---|---|---|---|
| PARKING | 0.00 | SECURITY-DEP | 945.00 |
| EXTRAS | 0.00 | LAST-MO-RENT | 0.00 |
| TOT-MO-RENT | 1020.00 | KEY-DEPOSIT | 0.00 |

Watson

| TR-DATE | TC | DESCRIPTION | CHARGES | PAYMENTS | |
|---|---|---|---|---|---|
| 04/07/06 | 60 | March/April Park | 110.00- | | Watson |
| 04/07/06 | 10 | Rent | | 148.00 | Watson |
| 04/24/06 | 10 | Rent Township | | 797.00 | Watson |
| 04/24/06 | 10 | CRED SecDep int | | 8.39 | Watson |
| 05/11/06 | 10 | Rent | | 154.00 | Watson |
| 06/09/06 | 10 | Rent | | 150.00 | Watson |
| 07/12/06 | 10 | Rent | | 150.00 | Watson |
| 07/12/06 | 10 | Rent Township | | 1740.00 | Watson |
| 08/11/06 | 10 | Rent | | 870.00 | Watson |
| 08/11/06 | 10 | Rent | | 150.00 | Watson |
| 09/12/06 | 10 | Rent Township | | 870.00 | Watson |
| 09/12/06 | 10 | Rent Township | | 870.00 | Watson |
| 09/12/06 | 10 | Rent | | 150.00 | Watson |
| 09/26/06 | 10 | Rent Township | | 870.00 | Watson |
| 10/11/06 | 10 | Rent | | 150.00 | Watson |
| 10/27/06 | 10 | Rent Township | | 994.00 | Watson |
| 11/20/06 | 10 | Rent | | 150.00 | Watson |
| 11/27/06 | 10 | Rent Township | | 870.00 | Watson |
| 11/27/06 | 10 | Rent Township | | 870.00 | Watson |
| 12/12/06 | 10 | Rent | | 150.00 | Watson |
| 01/17/07 | 10 | Rent | | 150.00 | Watson |
| 01/22/07 | 10 | Rent | | 870.00 | Watson |
| 02/20/07 | 10 | Rent | | 150.00 | Watson |
| 03/02/07 | 10 | Rent | | 1740.00 | Watson |
| 03/13/07 | 10 | Rent | | 870.00 | Watson |
| 03/13/07 | 60 | Appld Parking | | 150.00 | Watson |
| 04/13/07 | 10 | Rent | | 150.00 | Watson |
| 05/10/07 | 10 | Rent | | 150.00 | Watson |
| 06/11/07 | 10 | Rent | | 870.00 | Watson |
| 06/11/07 | 10 | Rent | | 150.00 | Watson |

LEASE SUMMARY:

| | | | CHARGES | PAYMENTS | |
|---|---|---|---|---|---|
| 10 | RENT-SUMMARY | | 43460.75 | 42444.75 | 1016.00 |
| 12 | SECURITY-DEP | | 945.00 | 945.00 | 0.00 |
| 20 | LATE-CHARGES | | 0.00 | 0.00 | 0.00 |
| 30 | N.S.F. CHARGES | | 0.00 | 0.00 | 0.00 |
| 40 | SUBLEASE-CHARGE | | 0.00 | 0.00 | 0.00 |
| 50 | DAMAGES | | 0.00 | 0.00 | 0.00 |
| 60 | OTHER-CHARGES | | 440.00 | 150.00 | 290.00 |
| | NET-BALANCE | | 44845.75 | 43539.75 | 1306.00 |

FROM : BANKIER APARTMENTS          FAX NO. : 2173283787          Jun. 12 2007 02:39PM  P3

## L E A S E   S T A T U S   R E P O R T

1318  301                         08-11-2007
01/01/04  THRU  06/11/07

```
PARKING          0.00          SECURITY-DEP    945.00
EXTRAS           0.00          LAST-MO-RENT      0.00
TOT-MO-RENT   1020.00          KEY-DEPOSIT       0.00
```

Watson

| TR-DATE | TC | DESCRIPTION | CHARGES | PAYMENTS | |
|---------|----|-------------|---------|----------|--|
| 10/04/05 | 10 | $30 per month | | 0.00 | Watson |
| 02/07/05 | 10 | Township Cks | | 1594.00 | Watson |
| 02/10/05 | 10 | Jan tenant rent | | 148.00 | Watson |
| 03/09/05 | 10 | Feb tenant rent | | 148.00 | Watson |
| 03/16/05 | 10 | Township Cks | | 797.00 | Watson |
| 04/06/05 | 10 | March tenant ren | | 148.00 | Watson |
| 04/25/05 | 10 | Rent | | 797.00 | Watson |
| 05/12/05 | 10 | April tenant ren | | 148.00 | Watson |
| 06/09/05 | 10 | Township Ck | | 797.00 | Watson |
| 06/09/05 | 10 | May tenant rent | | 148.00 | Watson |
| 06/23/05 | 10 | Township Ck | | 797.00 | Watson |
| 07/11/05 | 10 | June tenant rent | | 148.00 | Watson |
| 08/12/05 | 10 | July tenant rent | | 148.00 | Watson |
| 08/12/05 | 10 | Rent | | 797.00 | Watson |
| 09/16/05 | 10 | August rent rent | | 148.00 | Watson |
| 09/19/05 | 60 | August/SeptPARK | 110.00- | | Watson |
| 10/12/05 | 10 | Sept tenant rent | | 148.00 | Watson |
| 10/12/05 | 10 | Township | | 797.00 | Watson |
| 10/12/05 | 10 | Township Ck | | 797.00 | Watson |
| 11/09/05 | 10 | Oct tenant rent | | 148.00 | Watson |
| 11/09/05 | 10 | Township rent | | 797.00 | Watson |
| 11/09/05 | 60 | Oct/Nov PARK | 110.00- | | Watson |
| 11/21/05 | 10 | Township Ck | | 797.00 | Watson |
| 12/09/05 | 10 | Rent | | 148.00 | Watson |
| 01/06/06 | 10 | CRED Rent Inc. | | 1440.00 | Watson |
| 01/06/06 | 60 | Jan/Feb parking | 110.00- | | Watson |
| 01/06/06 | 10 | CRED Jan increas | | 45.00 | Watson |
| 01/06/06 | 10 | CRED Feb increas | | 45.00 | Watson |
| 01/06/06 | 10 | CRED March incr | | 45.00 | Watson |
| 01/06/06 | 10 | advisd park due | | 0.00 | Watson |
| 01/06/06 | 10 | CRED Interest | | 9.54 | Watson |
| 01/11/06 | 10 | Rent | | 148.00 | Watson |
| 01/11/06 | 10 | Township Ck | | 797.00 | Watson |
| 01/30/06 | 10 | Township Ck | | 797.00 | Watson |
| 02/08/06 | 10 | Rent | | 148.00 | Watson |
| 03/09/06 | 10 | Rent-Rec'd 3/7 | | 797.00 | Watson |
| 03/09/06 | 10 | Rent-Rec'd 3/3 | | 148.00 | Watson |

FROM : BANKIER APARTMENTS        FAX NO. : 2173283787        Jun. 12 2007 02:39PM P4

```
        L E A S E   S T A T U S   R E P O R T
1318  301                   08-11-2007
01/01/04  THRU  06/11/07

PARKING           0.00        SECURITY-DEP   945.00
EXTRAS            0.00        LAST-MO-RENT     0.00
TOT-MO-RENT    1020.00        KEY-DEPOSIT      0.00

Watson
```

| TR-DATE | TC | DESCRIPTION | CHARGES | PAYMENTS | |
|---------|----|-------------|---------|----------|---|
| 01/10/04 | 10 | CRED 1/1-1/9 | | 274.32 | Watson |
| 01/12/04 | 10 | Bal of SecDep | | 0.00 | Watson |
| 01/12/04 | 10 | by 1/16 DptHuman | | 0.00 | Watson |
| 01/13/04 | 10 | SecDep | | 620.75 | Watson |
| 01/16/04 | 10 | NSF Ck# 413 | 620.75- | | Watson |
| 01/23/04 | 10 | Redeposit NSF | | 620.75 | Watson |
| 01/23/04 | 10 | ten owes Jan | | 0.00 | Watson |
| 01/24/04 | 20 | Jan late Fee | | 0.00 | Watson |
| 01/24/04 | 30 | No NSF fee | | 0.00 | Watson |
| 02/11/04 | 20 | Feb Late Fee | | 0.00 | Watson |
| 02/09/04 | 10 | Jan ten share | | 148.00 | Watson |
| 02/17/04 | 12 | SecDep | | 945.00 | Watson |
| 03/09/04 | 10 | Feb ten rent | | 148.00 | Watson |
| 03/22/04 | 20 | Mar Late Fee | | 0.00 | Watson |
| 04/12/04 | 20 | April Late Fee | | 0.00 | Watson |
| 04/12/04 | 10 | March ten rent | | 148.00 | Watson |
| 04/14/04 | 10 | DeptTreas/PastDu | | 1594.00 | Watson |
| 05/07/04 | 10 | April ten rent | | 148.00 | Watson |
| 05/10/04 | 20 | May Late Fee | | 0.00 | Watson |
| 06/04/04 | 10 | May tenant rent | | 148.00 | Watson |
| 06/12/04 | 20 | June Late Fee | | 0.00 | Watson |
| 06/28/04 | 10 | Past Due | | 1594.00 | Watson |
| 07/09/04 | 10 | June tenant rent | | 148.00 | Watson |
| 07/13/04 | 20 | July Late Fee | | 0.00 | Watson |
| 08/10/04 | 10 | July tenant rent | | 148.00 | Watson |
| 08/25/04 | 20 | Aug Late fee | | 0.00 | Watson |
| 09/13/04 | 10 | August ten rent | | 148.00 | Watson |
| 09/15/04 | 20 | Sept Late Fee | | 0.00 | Watson |
| 10/12/04 | 20 | Oct Late Fee | | 0.00 | Watson |
| 10/12/04 | 10 | Part past due | | 3188.00 | Watson |
| 10/12/04 | 10 | Sept ten rent | | 148.00 | Watson |
| 11/16/04 | 10 | Oct ten rent | | 148.00 | Watson |
| 11/16/04 | 10 | Township Ck | | 797.00 | Watson |
| 12/15/04 | 10 | Nov ten rent | | 148.00 | Watson |
| 12/27/04 | 10 | Township Cks | | 1594.00 | Watson |
| 01/07/05 | 10 | Dec ten rent | | 148.00 | Watson |
| 01/01/05 | 10 | CRED rent Incr | | 360.00 | Watson |

GEORGE E. COLE®
LEGAL FORMS

Landlord's Five Days' Notice
(Illinois)

NO. 32P
January, 2000

CAUTION: Consult a lawyer before using or acting under this form. Neither the publisher nor the seller of this form makes any warranty with respect thereto, including any warranty of merchantability or fitness for a particular purpose.

# LANDLORD'S FIVE DAYS' NOTICE

To _Ms. Kellie Watson_

You are hereby notified that there is now due the undersigned landlord the sum of _One - Thousand Three Hundred Six_ Dollars and _00 cents_ —————————Cents, being rent for the premises situated in the _City of Chicago_, County of _Cook_ and State of Illinois, described as follows, to wit: _1318 W. Lunt Ave. - Apt. 301 Chicago, IL 60626_ —————————

together with all buildings, sheds, closets, out-buildings, garages and barns used in connection with said premises.

And you are further notified that payment of said sum so due has been and is hereby demanded of you, and that unless payment thereof is made on or before the expiration of five days after service of this notice your lease of said premises will be terminated _____ _Iris Martinez_ _____ is hereby authorized to receive said rent so due, for the undersigned.

Only FULL PAYMENT of the rent demanded in this notice will waive the landlord's right to terminate the lease under this notice, unless the landlord agrees in writing to continue the lease in exchange for receiving partial payment.

Dated this _Twelve_ day of _June_ , 200 _7_

By _Iris Martinez_

Landlord

Agent or Attorney

**Landlord's Five Days' Notice**
(Illinois)

NO. 32P
January, 2000

GEORGE E. COLE®
LEGAL FORMS

CAUTION: Consult a lawyer before using or acting under this form. Neither the publisher nor the seller of this form makes any warranty with respect thereto, including any warranty of merchantability or fitness for a particular purpose.

# LANDLORD'S FIVE DAYS' NOTICE

To Ms. Kellie Watson

You are hereby notified that there is now due the undersigned landlord the sum of One - Thousand Three Hundred Six Dollars and 00 cents Cents,

being rent for the premises situated in the City of Chicago, County of Cook

and State of Illinois, described as follows, to wit: 1318 W. Lunt Ave. - Apt. 301

Chicago, IL 60626

together with all buildings, sheds, closets, out-buildings, garages and barns used in connection with said premises.

And you are further notified that payment of said sum so due has been and is hereby demanded of you, and that unless payment thereof is made on or before the expiration of five days after service of this notice your lease of said premises will be terminated _____

Iris Martinez is hereby authorized to receive said rent so due, for the undersigned.

Only FULL PAYMENT of the rent demanded in this notice will waive the landlord's right to terminate the lease under this notice, unless the landlord agrees in writing to continue the lease in exchange for receiving partial payment.

Dated this Twelve day of June , 20 07

By _Iris Martinez_

Landlord

(Agent) or Attorney

COUNTY OF Cook } SS.

AFFIDAVIT OF SERVICE--When served by a person not an officer.

Iris Martinez _____ being duly sworn, on oath deposes and

says that on the __Twelve__ day of __June__, 200 7 he served the within notice

on the tenant named therein, as follows:*

(1) by delivering a copy thereof to the within named tenant, __Kellie Watson__

(2) by delivering a copy thereof to _____ a person above the age of thirteen years, residing on or in charge of the within described premises.

(3) by sending a copy thereof to said tenant by ** { certified { registered  mail, with request for return of receipt from the addressee.

(4) by posting a copy thereof on the main door of the within described premises, no one being in actual possession thereof.

Subscribed and sworn to before me this

__12__ day of __June__, 20__07__) _Iris Martinez_

*Strike out all paragraphs not applicable.
**Strike out word not applicable.

_____
Notary Public

---

# FIVE DAYS' NOTICE

vs.

Served the within notice by delivering a copy thereof to the within named:

_____ day of _____ A. D. 20 ___

this

Fees        - $  -  -  -
Mileage     - $  -  -  -
Service     - $  -  -  -

GEORGE E. COLE®
LEGAL FORMS

6-22-2007

ATTN: Constance Colon
      King Center
      4314 S 5th Cottage Grove
      312-747-2300

I Kellie R. Walser — am appealing the Notice of Termination June 1st of the Shelter Care Program DHS City of Chicago. Any questions please feel free to contact me at. 773-761-8033. I would like to remain in program. I'm currently looking for apartment with Shelter funds.
      Thank You,

      Kellie R. Walser

      773-761-8033



**City of Chicago**
**Richard M. Daley, Mayor**

**Chicago Department of**
**Human Services**

Sheryl C. McGill
Commissioner

Executive Office
1615 West Chicago Avenue
Chicago, Illinois  60622
312-746-8545
312-746-8973 (FAX)
312-744-6189 (TTY)

http://www.cityofchicago.org

<u>By Certified Mail</u>

March 6, 2007

Ms. Kellie Watson
P O BOX 18413
Chicago IL. 60618

Dear Ms. Watson,

As you know, you are currently out of compliance with CDHS's Shelter + Care (S+C) Program because of unresolved leasing issues.  To obtain a HUD subsidy for this program, CDHS needs a current, executed lease showing a rent that falls within HUD's Fair Market Rent (FMR).   Your lease expired on December 11, 2006.  You have not signed an addendum offered by your landlord nor executed a new lease for the unit that is within FMR.  At present, CDHS does not have needed documentation to cover any rent requests for your unit

A meeting has been scheduled at North Area Center on Wednesday, March 14th at 10:00 a.m.  Please feel free to bring any and all documentation to support your contention that you have a rental subsidy from other sources beyond the S+C program.  At the meeting on March 14th, we will discuss next steps with respect to your non-compliance status.

Feel free to call me if you have any questions regarding this matter.  I can be reached directly at 312.744.2660.

Sincerely,

Janice Finney
District Manager
North Area Center

cc:  Bettye Williams, HS II
     Sunny Jacob, SW III
     Regina Freeman, Hodges, Supervisor of Social Work



Message Confirmation Report

MAR-13-2007 12:14 PM TUE

```
WorkCentre M20 Series
Machine ID              :
Serial Number           :    RYU272614.......
Fax Number              :
```

```
Name/Number      :    7373621
Page             :    2
Start Time       :    MAR-13-2007 12:13PM TUE
Elapsed Time     :    00'36"
Mode             :    STD G3
Results          :        O.K
```

*To: Mrs. Booth*
*217-328-6787 Fax #*

*3-9-2007*
*3-13-2007*

*From: Kelke R. Watson*

March 9, 2007


To    : Bankier Apartments & Office Rentals
         406 Green Street
         Champaign, Illinois 61820
         1-217-328-3770
         1-217-637-5930
              c/o
Mrs. Iris Martinez,

This letter is in regards to the lack of
maintenance in the hallways (common area) of
the building. I contacted you each week of
February 2007 regarding the garbage sitting
in the back hallway, overflowing for more
than 3 to 4 days at a time. There are no
garbage bags inside of the garbage cans and
these cans have not been cleaned since I
moved here (1-10-2004). The smell is so bad
now I spray bleach inside of the cans to
minimize the smell. The stairs in the back
have not been moped for the past 2 months.
The front carpeted stairs have also not been
vacuumed in several months. The reason I am
sending this letter today is that the
garbage is yet again overflowing. It has
been exactly 4 days since the garbage was
taken from inside of this building to the
dumpsters. When I spoke with you 2-19-2007
you claimed that the garbage is taken out
twice a week. That simply is not the truth.
Is their some kind of problem with the women
that lives here in the building that

occasionally dumps the garbage?  This is not
just a maintenance issue it is unsanitary
and it needs to be corrected immediately. If
you have any questions Please feel free to
contact me.


Thank you,

*3-9-2007*

Kellie R. Watson
1318 West Lunt Avenue #301
Chicago, Illinois 60626
1-773-761-8033



Subscribed and sworn to before me
this ____ Day of _MARCH_ 20__
at Chicago, County of Cook, State of Illinois

Notary Public

"OFFICIAL SEAL"
DIANA BISSIC
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 05/16/08

January 16, 2007


To whom it may concern at HUD:


My name is Kellie R. Watson and I am writing in regards
to my housing grant. There seems to be a great deal of
confusion as to the exact terms and conditions of this
grant. Let me begin by explaining that not only am I
under Social Security Disability, I am also a Crime
Victim and I have been declared Federally indigent by a
Federal Judge. My cases are currently in the Supreme
Court as well as the State Supreme Court of Illinois. I
am a single Mother who has been forced into being
homeless, living in hotels motels and shelters due to
the fact that I am innocent victim of a violent crime.
(See attached)

As of October 2003 Senator Peter Fitzgerald assisted me
with obtaining a housing grant, due to my extreme
mitigating circumstances.(see attached)  I am currently
in the Chicago Department of Human Services Shelter
Plus Care Program. They (Shelter Plus Care Program)
distribute the funds allocated through the Housing and
Urban Development Federal funds. However, there seems
to be problems with the several programs that I qualify
for under HUD.

On September 26th 2006 Bettye Williams (312-745-0418) my
caseworker and Sunny Jacobs (312-745-0015) Supervisor
made a home visit at 1pm. After looking through my
entire apartment we discussed the fact that my rent was
the highest in the program and that I would have to
start looking for other housing within the Shelter Plus
care requirements. When I was first approved for SPC
$950.00 was the limit to what I could rent. My current
rent is $1020.00 and my portion has gone from #148.00
2004-2005 to $150.00 for the year of 2005-2006. I
informed both Mrs. Williams and Mr. Jacobs that I was

not interested in moving and I felt that I was within
the Fair Market Rate for the area in Chicago in which
my son and I live. I also explained to them that I
needed this request be sent to me in writing. My
current lease has expired as of 12-11-2006.  I received
a letter from Janice Finney (312-744-2660) District
Manager on 12-4-2006 regarding Maximum Fair Market Rent
allowance (see attached) along with an addendum to my
lease. This addendum would allow my son and me to
remain in our current residence at the same amount of
rent until 3-11-2007.  I refused to sign the addendum
for several reasons.  The terms of the addendum were
not clearly spelled out. It was my understanding that
my Senatorial housing grant would cover all that my
housing requirements for the current year and each
subsequent year until I no longer need it.

On 12-12-2006 I wrote the Property Management Iris
Martinez (773-761-7059) and requested a 12 month lease.
According to the response I received, the Chicago
Department of Human Services was not approving funding
for more that 90 days. (See attached)

On December 19th 2006 I spoke with Sunny Jacobs
regarding the status of the addendum. We agreed to meet
on December 22nd 2006 at 11:30am. Due to the rainy
weather conditions, my Federal liaison, Mr. Hawkins
(773-737-3621), and I arrived at 11:45am. It was clear
from this meeting, which was also attended by Regina
Hodges (312-745-8516) Acting Social Worker Supervisor
for the City of Chicago Human Services Department that
extending my lease was not an option. It was also made
clear that the SPC Program was not responsible for
making sure that the apartment that I was renting was
up to standards. I was told to contact 311 and/or seek
legal actions in housing court. I presented a list from
the beginning of my lease of repairs that needed to be
completed. When I submitted the list to Bettey
Williams, Sunny Jacobs and Iris Martinez, only a few
items on the list were done. I was under the impression

that an apartment funded by HUD should always be keep up to standards. The City of Chicago's DHS SPC Program did nothing.

On January 12, 2007 I signed four rent request forms which were given to me by Janice Finney, the District Supervisor. Both Mr. Hawkins and I have been in constant contact with the owner, Mrs. Booth (217-637-5930). As of January 10th 2007 Mrs. Booth has no problem offering me another 12 month lease. She only needs to make sure there is no problem with my housing grant. Mrs. Booth also indicated that in the past 30 years of renting to tenants with some sort of housing voucher or grant, this was the first time there has been a problem. Is their another provider that could pay the funds from HUD to a landlord other than my current provider?

This lack of all parties involved having all of the correct information is causing me a great deal of added stress and anxiety to my existing condition (Post Traumatic Stress Disorder). I am taxed enough with cases in both The United States Supreme Court, as well as The State of Illinois Supreme Court. For this reason, I am requesting a complete and detailed explanation of my Senatorial housing grant including all its terms and conditions.

All questions and concerns can be directed to me at 773-761-8033.

Thank you,

Kellie R. Watson

Subscribed and sworn to before me this _____ day of _JANUARY_ 20_07_ at Chicago, County of Cook, State of Illinois

"OFFICIAL SEAL"
DIANA BISSIC
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 05/16/08



**City of Chicago**  Chicago Department of Human Services
North Area Center
4740 North Sheridan Road
Chicago, Illinois 60640

KELLIE R. WATSON
1318 W. LUNT AV. # 301
CHICAGO IL. 60626



**City of Chicago**  Department of Human Services
North Area Human Service Center
4740 North Sheridan Road
Chicago, Illinois 60640

MS. KELLIE R. WATSON
1318 WEST LUNT AV # 301
CHICAGO IL. 60626

**City of Chicago**
Richard M. Daley, Mayor

**Chicago Department of Human Services**

Sheryl C. McGill
Commissioner

Executive Office
1615 West Chicago Avenue
Chicago, Illinois 60622
312-746-8545
312-746-8973 (FAX)
312-744-6189 (TTY)

http://www.cityofchicago.org

November 21, 2006

Ms. Kellie Watson
P O BOX 18413
Chicago IL. 60618

RE: HUD Maximum Fair Market Rent allowance

Dear Ms. Watson,

As previously communicated by North Area staff on several occasions including during a home visit on September 21, 2006, the Fair Market Rent (FMR) for your two (2) bedroom unit exceeds than HUD guidelines. In the Shelter + Care (S+C) program, there is no option for the tenant to pay above the FMR. North Area staff attempted to negotiate your future rent to keep it within HUD's FMR but these attempts were unsuccessful. Rather, a representative for your landlord informed North Area Center staff that your rent will be going up in 2007.

Please immediately look for a two (2) bedroom unit in the amount of $901 per month or below in keeping with HUD's FMR guidelines. Heat should be included in the rent. Given that your current lease will expire on December 11, 2006, your landlord has offered to extend your current lease for 90 days and abide by the same terms and conditions of the original lease. I strongly recommend that you sign this addendum to the lease to allow more time to locate another 2 bedroom unit.

Should you need assistance in locating another apartment, we are more than willing to help you in your housing search. Please feel free to call me if you have any questions regarding this matter. I can be reached directly at 312.744.2660.

Sincerely,

Janice Finney
District Manager
North Area Center

Encl. Addendum to Lease

cc: Janice Finney, District Manager
    Sunny Jacob, SW III
    Bettye Williams, HS II





**City of Chicago**
Richard M. Daley, Mayor

**Chicago Department of
Human Services**

Sheryl C. McGill
Commissioner

Executive Office
1615 West Chicago Avenue
Chicago, Illinois  60622
312-746-8545
312-746-8973 (FAX)
312-744-6189 (TTY)

http:/www.cityofchicago.org

<u>By Certified Mail</u>

March  20, 2007

Ms. Kellie Watson
P O BOX 18413
Chicago IL. 60618

Dear Ms. Watson,

Thank you for meeting with us yesterday.  As discussed, your lease for your two-bedroom apartment expired on December 11th and attempts to extend your 2006 lease failed.  As of March 11, 2007, you do not have an executed lease or a lease addendum.  Further, your apartment does not meet HUD's fair market rent (FMR) as requested   ,  CDHS's Shelter +Care (S+C) program.

Because of these leasing issues, you are currently out of compliance with the S+C program.  Moreover, as reported during today's meeting, communication to date with the owner and/or property manager has not resulted in any rent adjustment or a lease renewal.  At this time, moving to a new apartment that falls within the FMR for a 2 bedroom unit ($935 per month, heat included) is the only option if you wish to continue in CDHS's S+C program.  <u>Please be advised that CDHS will pay its portion of your rent for your current unit through April 30, 2007.</u>  As of May 1, 2007, there will no longer be a means to pay a potion of your rent at your current address through CDHS's S+C program.  After May 1, 2007, the market rent will be your responsibility if you choose to remain in the unit at your current address.

At yesterday's meeting, an offer was again extended to assist you in finding a two-bedroom apartment in Chicago that falls within the FMR.  Please contact your case manager, Ms. Williams, or Sunny Jacob, her supervisor, at North Area Center at 312.744.2580 if you would like housing search assistance.

Feel free to call me if you have any questions regarding this matter.  I can be reached directly at 312.744.2660.

Sincerely,

Janice Finney
District Manager
North Area Center



cc:  Ms. Iris Martinez, Property Manager
     Ms. Miriam Booth, Owner
     Regina Freeman, Hodges, CDHS Supervisor of Social Work



City of Chicago
Richard M. Daley, Mayor

Chicago Department of
Human Services

Sheryl C. McGill
Commissioner

Executive Office
1615 West Chicago Avenue
Chicago, Illinois  60622
312-746-8545
312-746-8973 (FAX)
312-744-6189 (TTY)

http://www.cityofchicago.org

**BY CERTIFIED MAIL**
May 11, 2007

Ms. Kellie Watson
P O BOX 18413
Chicago IL. 60618

Re:        Notice of termination from the S+C Program

Dear Ms. Watson,

As you know, your lease expired on December 11, 2006.  At that time, Chicago
Department of Human Services (CDHS) expressed a willingness to accept an
executed 90 day lease addendum in lieu of a one-year lease to allow time for a
new lease to be negotiated within Fair Market Rent (FMR) as required by
CDHS.  We also recognized the need to allow time to relocate to another
apartment of your choosing if renegotiating the lease proved unsuccessful.
Although a lease addendum was offered by the owner, you were unwilling to
sign it.   Since September of 2006, CDHS has provided notification by phone,
sent letters by certified mail, held meetings with you in person at North Area
Center as well as conducted home visits to make sure that you were fully
informed of your non-compliant status in CDHS's Shelter + Care Program.

A meeting was scheduled for May 11, 2007 at 10:00 a.m. as one final attempt
to resolve outstanding leasing issues.   Unfortunately, although you had
confirmed that you would attend, you did not show up for this meeting.   As
communicated to you in person in the meeting on March 19, 2007 and
reiterated in the certified letter dated March 20, 2007, CDHS will no longer pay
a portion of your rent through the S+C program.  CDHS's final monthly rental
payment was April 2007.  Should you choose to remain in your unit, you will
need to negotiate a rental agreement with your landlord.

This letter is to officially provide notice of termination from the S+C Program,
effective immediately.

If we can be of further assistance to provide other support during this time of
transition, please contact your case manager, Ms. Williams at 312.744.2580.

Sincerely,

Janice Finney
District Manager
North Area Center

cc:  Bettye Williams, HSS II
      Sunny Jacob, SW III
      Regina Freeman -Hodges, CDHS Supervisor of Social Work
      Constance Colin, Acting Director, Field Operations
      Iris Martinez, Property Manager, Bankier Apts.





**City of Chicago**
Richard M. Daley, Mayor

**Chicago Department of
Human Services**

Sheryl C. McGill
Commissioner

Executive Office
1615 West Chicago Avenue
Chicago, Illinois  60622
312-746-8545
312-746-8973 (FAX)
312-744-6189 (TTY)

http://www.cityofchicago.org

June 29, 2007


Ms. Iris Martinez
Property Manager
Bankier Apartments
1318 W. Lunt
Chicago, IL  60626

                    RE:  Kellie Watson

Dear Ms. Martinez:

Thank you for your willingness to work with the Chicago Department of
Human Services' Shelter + Care (S+C) Program, on behalf of  Ms.Kellie
Watson.  As you know, the lease for Ms. Watson's two-bedroom apartment
expired on December 11, 2006, and our mutual attempts to extend beyond that
date were unsuccessful.  Thank you for the current extension through April 30,
2007. This was done with the expectation that Ms. Watson would find alternate
housing that was within the S+C guidelines.

As of this writing, Ms. Watson has been unable to locate acceptable housing.
We are, however, actively assisting her in identifying alternative housing.  To
allow time for her to find appropriate housing that meet the S+C Program
guidelines, I am requesting that Bankier Apts extend her 2006 lease agreement
through July 31, 2007. CDHS  will continue to pay our portion of the rent and
Ms. Watson will continue to pay her portion.

We at CDHS North Area Center very much appreciate your flexibility and
cooperation on this matter.  Please contact me if you have any questions. I can
be reached directly at 312.744.2660.

Sincerely,

*Janice Finney*

Janice Finney
District Manager
North Area Center


cc:  Kellie Watson
      Sunny Jacob, SW III, North Area Center
      Bettye Williams, Human Service Specialist II
      Constance Colin, Assistant Director, Field Operations
      Regina Freeman, Hodges, CDHS Supervisor of Social Work

CHICAGO DEPARTMENT OF

**Bankier Apartments**
c/o Alex & Iris Martinez
1318 – 1324 W. Lunt Avenue
Chicago     IL      60626
Ph (773) 761-7059

## ADDENDUM TO LEASE

**Date:**      November 22, 2006

**Re:**      1318 W. Lunt - Apt.#301     **Tenant:** Kellie Watson
            Addendum to Lease dated **November 22, 2006**

This lease is being extended for a term of 90 days.  From 12/11/06 through
March 11, 2007.

At the same terms and conditions of the original lease.

Lessee_____     Lessor_____

December 12, 2006


To:    **Bankier Apartments**
       c/o Alex & Iris Martinez
       1318-1324 West Lunt Avenue
       Chicago, Illinois 60626
       (773)-761-7059(cell)(847)-647-5450(office)
       (217)-238-3770(main)



Dear Mrs. Martinez,

As per our conversation December 4th 2006 at 9:22pm
I declined the Addendum to Lease which is only for
3 months. I requested a 12 month standard Lease.
You informed me that you needed to get in touch
with the Department of Human Services and that you
would get back in touch with me. It is now the 12th
of December and I still have no Lease. Please
contact me ASAP so that I can sign it. Any further
questions Please feel free to contact me or my
Liaison Mr. Hawkins at (773)419-3153.

Thank you,


Kellie R. Watson
1318 West Lunt Avenue #301
Chicago, Illinois 60626
(773)-761-8033

**Bankier Apartments**                    **1318 W. Lunt Ave. – Chicago IL 60626**

**PH 847-588-1100      FAX 847-647-1596**

## FAX COVER SHEET
## INCLUDES (2) PAGES TOTAL

Date:           December 14, 2006

To:             Ms. Kellie Watson
                1318 W. Lunt – Apt.#301
                Chicago   IL   60626

RE:             LEASE RENEWAL

In response to your letter dated December 12, 2006 we cannot offer you a 12 month lease, since the Chicago Department of Human Services is not approving funding for more than 90 days.

Unless you have an independent source of funding we are not able to extend your lease for more than 90 days.

Best Regards,

*Iris Martinez*
Iris Martinez
Manager

cc: Mrs. Miriam Booth
    Mr. Hawkins

No. 104

# CHICAGO APARTMENT LEASE

Tenant Ordinance Summary Attached

**Unfurnished**

© SANFORD KAHN
Copyright 1981
180 N. LaSalle
All Rights Reserved
Revised April 2004

| DATE OF LEASE | TERM OF LEASE | | MONTHLY RENT | SECURITY DEPOSIT |
|---|---|---|---|---|
| | BEGINNING | ENDING | $ 1,020.00 Rent* | |
| December 7, 2005 | December 12, 2005 | December 11, 2006 | $55.00 Parking* | $ 1,020.00 * |

### LESSEE

NAME:     Kellie R. Watson

APT. NO.     301

ADDRESS OF
PREMISES:     1318 W. Lunt Avenue

CITY:     Chicago   IL   60626

### LESSOR

#### IDENTIFICATION OF OWNER AND AGENTS

Owner or Authorized Management Agent:
Bankier Apartments

406 Green Street
NAME

ADDRESS
Champaign   IL   61820   Ph(217) 328-3770
CITY                 TELEPHONE NUMBER

Person Authorized to Act on Behalf of Owner for Purpose of
Service of Process and Receipting for Notices:
Alex & Iris Martinez

1318 W. Lunt Avenue - Apt. #102
ADDRESS
Chicago   IL   60626   Ph(773) 761-7059
CITY                 TELEPHONE NUMBER

#### NOTICE OF CONDITIONS AFFECTING HABITABILITY

I hereby acknowledge that Lessor has disclosed any code violations, code enforcement litigation and / or compliance board proceedings during the previous 12 months for the apartment and common area and any notice of intent to terminate utility service, copies of which, if any, are attached to this Lease.

In consideration of the mutual agreements and covenants hereinstated, Lessor hereby leases to Lessee, and Lessee hereby leases from Lessor, for a private dwelling, the Apartment designated above, together with the fixtures and appliances belonging thereto, for the above Term.

ADDITIONAL COVENANTS AND AGREEMENTS (if any).
Tenant is due $ 9.54 in security deposit interest, which will be credited to the account.
Special Notation:
* 1)   Parking is not included in rent.
* 2)   Rent will remain at $ 975.00/month, for the months of Jan/06, Feb/06 & Mar/06.
Effective April 1st of 2006 the rent will increase to $ 1,020.00/month. Security Deposit also needs to be updated from $ 945.00 to $1,020.00.

LESSEE _____ 12-7-05 (SEAL)

_____ 12-7-05 (SEAL)

LESSOR _____ (SEAL)

_____ (SEAL)

## LEASE COVENANTS AND AGREEMENTS

**1. RENT:** Lessee shall pay to the Lessor or Lessor's agent the monthly rent set forth above on or before the first day of each and every month in advance at Lessor's address stated above or such other address as Lessor may designate in writing. The time of each and every payment of rent is of the essence of the Lease.

**2. LATE CHARGES:** The monthly rent shall be increased $10.00 per month for the first $500.00 in monthly rent plus five (5%) percent per month for any amount in excess of $500.00 in monthly rent if paid after the fifth of the month. Rent shall be considered received, if mailed, on the date of receipt.

**3. SECURITY DEPOSIT:** Lessee has deposited with Lessor the security deposit as set forth above to be retained by Lessor to ensure that Lessee shall fully perform each and every term and obligation provided in this Lease. If Lessee fully performs each and every obligation as provided in this lease and pays all sums due to Lessor, then Lessor, after the Lessee has surrendered possession

repair and in a clean, sightly and healthy condition, Lessor or his agents may replace the premises in the same condition of repair, sightliness and cleanliness as existed at the date of execution of this Lease. Lessee agrees to pay Lessor for all expenses incurred by Lessor in replacing the premises in that condition. Lessee shall not cause or permit any waste, misuse or neglect to occur to the water, gas, utilities, or any other portion of the premises.

**8. USE OF PREMISES:** The premises shall be occupied solely for residential purposes by Lessee and those persons listed in the Application for the Lease. Neither Lessee nor any persons residing with or visiting Lessee shall suffer, perform or permit any act or practice that may damage the reputation of the Building or be injurious or disruptive to the Building and operation thereof, or be disturbing to other tenants, be illegal, immoral, or increase the rate of insurance on the Building. Lessee shall be responsible for the conduct of all persons residing with, or visiting Lessee.

*Attn: Ron Burlison*
*Fax: (312)746-4863*

**L E A S E   S T A T U S   R E P O R T**
09-23-2004

1  3  301
01/01/04  THRU  12/10/04

_____ o _____

| | | | |
|---|---|---|---|
| PARKING | 0.00 | SECURITY-DEP | 1890.00 |
| F  TRAS | 0.00 | LAST-MO-RENT | 0.00 |
| L -MO-RENT | 945.00 | KEY-DEPOSIT | 0.00 |

*Attn: Sunny Jacob*
*Fax: (312)744-3192*

Watson

| TR-DATE | TC | DESCRIPTION | CHARGES | PAYMENTS | |
|---|---|---|---|---|---|
| 01/10/04 | 10 | CRED 1/1-1/9 | | 274.32 | Watson |
| 01/12/04 | 10 | Bal of SecDep | | 0.00 | Watson |
| 01/12/04 | 10 | by 1/16 DptHuman | | 0.00 | Watson |
| 01/13/04 | 12 | SecDep | | 620.75 | Watson |
| 01/16/04 | 10 | NSF Ck# 413 | 620.75- | | Watson |
| 01/23/04 | 10 | RedpstNSF#413 | | 108.53 | Watson |
| 01/23/04 | 12 | SecDep SGS | | 512.22 | Watson |
| 01/24/04 | 20 | Jan late Fee | 32.00- | | Watson |
| 01/24/04 | 30 | NSF Fee | 20.00- | | Watson |
| 02/11/04 | 20 | Feb Late Fee | 32.00- | | Watson |
| 02/09/04 | 10 | Part Jan | | 148.00 | Watson |
| 02/17/04 | 12 | SecDep | | 945.00 | Watson |
| 03/09/04 | 10 | Jan | | 148.00 | Watson |
| 03/22/04 | 20 | Mar Late Fee | 32.00- | | Watson |
| 04/12/04 | 20 | April Late Fee | 32.00- | | Watson |
| 04/12/04 | 10 | Feb | | 148.00 | Watson |
| /14/04 | 10 | DeptTreas/PastDu | | 1594.00 | Watson |
| 05/07/04 | 10 | Past Due | | 148.00 | Watson |
| 05/10/04 | 20 | May Late Fee | 32.00- | | Watson |
| 06/04/04 | 10 | Past Due | | 148.00 | Watson |
| /12/04 | 20 | June Late Fee | 32.00- | | Watson |
| 06/28/04 | 10 | Past Due | | 1594.00 | Watson |
| 07/09/04 | 10 | Past Due | | 148.00 | Watson |
| 07/13/04 | 20 | July Late Fee | 32.00- | | Watson |
| 08/10/04 | 10 | Past Due | | 148.00 | Watson |
| 08/25/04 | 20 | Aug Late fee | 32.00- | | Watson |
| 09/13/04 | 10 | Rent | | 148.00 | Watson |
| 09/15/04 | 20 | Sept Late Fee | 32.00- | | Watson |

LEASE SUMMARY:

| | | CHARGES | PAYMENTS | |
|---|---|---|---|---|
| 10 | RENT-SUMMARY | 9125.75 | 4754.85 | 4370.90 |
| 12 | SECURITY-DEP | 1890.00 | 2077.97 | 187.97- |
| 20 | LATE-CHARGES | 288.00 | 0.00 | 288.00 |
| 30 | N.S.F. CHARGES | 20.00 | 0.00 | 20.00 |
| 40 | SUBLEASE-CHARGE | 0.00 | 0.00 | 0.00 |
| 50 | DAMAGES | 0.00 | 0.00 | 0.00 |
| 60 | OTHER-CHARGES | 0.00 | 0.00 | 0.00 |
| | NET-BALANCE | 11323.75 | 6832.82 | 4490.93 |

BAL-DUE  (Net-Balance - Security-Dep-Paid)          2600.93

**DEPARTMENT OF HUMAN SERVICES**
PETTY CASH FUND
1615 W. CHICAGO AVE.
CHICAGO, IL 60622

VOID OVER $3,188.00

09-29-04

DATE_____

PAY
TO THE
ORDER OF _____ BANKIER APTS & KELLIE WATSON

THE SUM OF $3,188 dols 00 cts _____ $

**LaSalle Bank**
ABN AMRO

LaSalle Bank N.A.
Chicago, Illinois 60603
lasallebank.com

FOR _____ S+C June, July, Aug, Sept 2004

DC

⑈002025⑈ ⑆071000505⑆ 5800391038⑈

**DEPARTMENT OF HUMAN SERVICES**
PETTY CASH FUND
1615 W. CHICAGO AVE.
CHICAGO, IL 60622

1694

2-50-710

VOID OVER $945.00

DATE 01-13-04

PAY
TO THE
ORDER OF    BANKIER APARTMENTS/KELLIE WATSON

$    945.00

THE SUM OF $945 dols 00 cts

DOLLARS

**LaSalle Bank N.A.**
Member ABN AMRO Group
Chicago, Illinois 60603
lasallebank.com

FOR    Security Deposit – Emergency Services

MP

⑈001694⑈ ⑈071000505⑈ 5800391038⑈

2066204

```
CITY  OF  CHICAGO
DEPARTMENT  OF  FINANCE

OFFICE OF THE COMPTROLLER
121 NORTH LASALLE STREET – ROOM 501 – CHICAGO, ILLINOIS – 60602
```

## CITY OF CHICAGO REMITTANCE ADVICE

FUND: 869   VENDOR 50077121   B

WARRANT NO.: **98893193**

NON-NEGOTIABLE INSTRUMENT

| DATE | INVOICE NO. | DEPT. | VOUCHER NO. | ORDER NO. | AMOUNT |
|------|-------------|-------|-------------|-----------|--------|
| 101804 | 114-06491 | HUMAN | PV53 045303773 | | **********797.00 |

TOTAL: $************797.00

THIS DOCUMENT HAS BLACK PRINTING OVER A LIGHT GREEN BACKGROUND ON WHITE PAPER.

DATE: **10 20 04**

## TO THE TREASURER OF THE CITY OF CHICAGO

SERIAL NUMBER **98893193**

98893193

| FUND | DEPT. | ORGN. | OBJT. |
|------|-------|-------|-------|
| 869 | 53 | 2005 | 0140 |

VENDOR 50077121  B
TO THE ORDER OF:

2-439
710

$797.00

**BANKIER APTS
& KELLIE WATSON
1615 W CHGO AV-CDHS/3RD FL
CHICAGO            IL 60622**

REVERSE SIDE HAS CITY SEAL WATERMARK.    MAYOR    CITY COMPTROLLER

⑈98893193⑈  ⑆071004394⑆        026⑈

CHECKS CASHED • CASA DE CAMBIO
UTILITY BILL PAYMENT CENTER • CELL PHONE CARDS
WESTERN UNION

**COMMUNITY
SERVICE CENTER**

63-1260
631

7000 N. CLARK STREET - CHICAGO, IL 60626
PHONE: (773) 764-8600  **TO VERIFY - CALL 312-491-7300**
Open 24 Hours - We Never Close
Abierto Las 24 Horas - Nunca Cerramos

BANCO POPULAR NORTH AMERICA
CHICAGO, ILLINOIS

2/22/2008

**915171**

MV  1915171

REMITTER

**PLS Check Cashers-
Clark & Lunt, Inc.**

PAY TO THE
ORDER OF

***ONE HUNDRED FIFTY AND 00/100 U.S. Dollars***

$150.00***

**STATE
REGULATED**

REPLACEMENT OF THIS INSTRUMENT, IF NECESSARY, WILL BEGIN 30 DAYS AFTER THIS
PURCHASE DATE. THERE WILL BE A FEE CHARGED FOR THIS SERVICE.
THE PURCHASER OF THIS INSTRUMENT AGREES TO INSERT THE NAME OF THE PAYEE
AND ASSUMES TOTAL RESPONSIBILITY FOR ANY EVENTS MADE POSSIBLE BY FAILURE
TO DO SO. **NO REFUND WITHOUT YELLOW RECEIPT**

**NON-NEGOTIABLE**

⑈1915171⑈ ⑆063112605⑆ 012018237 8⑈

RENT PAYMENT.    FROM:    NAME _1318 W Lunt_

ADDRESS _____ APT. # _301_

FROM _1-0-04_ TO _____ Sec. Deposit
      DATE         DATE

PAYMENT MAY BE MADE AT ANY TELLER OR DRIVE - IN WINDOW OR KEEP THIRD COPY
AND DEPOSIT WITH YOUR CHECK IN THE NIGHT DEPOSITORY OR MAIL TO THE BANK.

AMOUNT $ _626.75_

☐ CASH    ☑ CHECKS

#413

PAY TO:    BANKIER APARTMENTS & OFFICE RENTALS

**BUSEY BANK**
URBANA, IL 61801

_Balance $ 1269.25_

OWNED AND OPERATED BY LEON BANKIER

⑈071102568⑈ 1400017752⑈    009

---

RENT PAYMENT    FROM:    NAME _K. Watson_

ADDRESS _1318 W Lunt_ APT. # _301_

FROM _____ TO _____
      DATE         DATE

PAYMENT MAY BE MADE AT ANY TELLER OR DRIVE - IN WINDOW OR KEEP THIRD COPY
AND DEPOSIT WITH YOUR CHECK IN THE NIGHT DEPOSITORY OR MAIL TO THE BANK.

AMOUNT $ _149.00_

☐ CASH    ☑ CHECKS

PAY TO:    BANKIER APARTMENTS & OFFICE RENTALS

**BUSEY BANK**
URBANA, IL 61801

OWNED AND OPERATED BY LEON BANKIER

⑈071102568⑈ 1400017752⑈    009

---

| Thanks For Using Your Neighborhood **CURRENCY EXCHANGE** | **MONEY ORDER** |
|---|---|

2735 N. CLARK STREET - CHICAGO, ILLINOIS 60614
PHONE (773) 348-5474 FAX (773) 348-8587
PURCHASER MUST PRESENT THIS RECEIPT TO INITIATE REFUND.

BANCO POPULAR ILLINOIS
CHICAGO, ILLINOIS

**No. D 516511**

70-2445/719

Clark
Diversey
Currency
Exchange
Inc.

KELLIE WATSON 1318 W Lunt #301 Chg IL 60626

REMITTER

PAY TO THE ORDER OF _Bankier Apts & Rentals_

ONE HUNDRED FIFTY AND 00/100 DOLLARS

**STATE REGULATED**

NO REFUND IF SOLD IN BLANK

**NON-NEGOTIABLE**

Distributed By
AMERICAN LEGAL FORMS
CHICAGO, IL 332-1922

**No. 104**
# CHICAGO APARTMENT LEASE
**Unfurnished**

© SANFORD KAHN
Copyright 1981
180 N. LaSalle
All Rights Reserved
Revised January 2003

**Tenant Ordinance Summary Attached**

| DATE OF LEASE | TERM OF LEASE | | MONTHLY RENT | SECURITY DEPOSIT |
|---|---|---|---|---|
| | BEGINNING | ENDING | | |
| January 10, 2004 | Jan. 10, 2004 | December 10, 2004 | $ 945.00 | $ 1,890.00 |

## LESSEE

**NAME:** Kellie R. Watson

**APT. NO.** 301

**ADDRESS OF PREMISES:** 1318 W. Lunt St.

**CITY:** Chicago   IL   60626

## LESSOR

### IDENTIFICATION OF OWNER AND AGENTS

Owner or Authorized Management Agent:
Bankier Apartments
NAME
406 Green Street
ADDRESS
Champaign   IL   61820   Ph (217) 328-3770
CITY                                    TELEPHONE NUMBER

Person Authorized to Act on Behalf of Owner for Purpose of Service of Process and Receipting for Notices:
Alex and Iris Martinez
NAME
1318 W. Lunt St. - Apt. #102
ADDRESS
Chicago   IL   60626   Ph (773) 761-7059
CITY                                    TELEPHONE NUMBER

### NOTICE OF CONDITIONS AFFECTING HABITABILITY

I hereby acknowledge that Lessor has disclosed any code violations, code enforcement litigation and / or compliance board proceedings during the previous 12 months for the apartment and common area and any notice of intent to terminate utility service, copies of which, if any, are attached to this Lease.

In consideration of the mutual agreements and covenants hereinstated, Lessor hereby leases to Lessee, and Lessee hereby leases from Lessor, for a private dwelling, the Apartment designated above, together with the fixtures and appliances belonging thereto, for the above Term.

ADDITIONAL COVENANTS AND AGREEMENTS (if any).

Note: Any damages done to apartment at the time tenant is leaving, will be deducted from Security Deposit.

**LESSEE**

_____ R Watson _____ (SEAL)

_____ Kyle C Watson _____ (SEAL)

**LESSOR**

_____ Iris Martinez _____ (SEAL)

_____ (SEAL)

## LEASE COVENANTS AND AGREEMENTS

**1. RENT:** Lessee shall pay to the Lessor or Lessor's agent the monthly rent set forth above on or before the first day of each and every month in advance at Lessor's address stated above or such other address as Lessor may designate in writing. The time of each and every payment of rent is of the essence of the Lease.

**2. LATE CHARGES:** The monthly rent shall be increased $10.00 per month for the first $500.00 in monthly rent plus five (5%) percent per month for any amount in excess of $500.00 in monthly rent if paid after the fifth of the month. Rent shall be considered received, if mailed, on the date of receipt.

**3. SECURITY DEPOSIT:** Lessee has deposited with Lessor the security deposit as set forth above, to be retained by Lessor to ensure that Lessee shall fully perform each and every term and obligation provided in this Lease. If Lessee fully performs each and every obligation as provided in this lease and pays all sums due to Lessor, then Lessor, after the Lessee has surrendered possession of the premises and has delivered the keys thereto, shall refund said deposit to Lessee, including interest as is provided by law. If Lessee has failed to perform or

repair and in a clean, sightly and healthy condition, Lessor or his agent may replace the premises in the same condition of repair, sightliness and cleanliness as existed at the date of execution of this Lease; Lessee agrees to pay Lessor for all expenses incurred by Lessor in replacing the premises that condition. Lessee shall not cause or permit any waste, misuse or neglect to occur to the water, gas, utilities, or any other portion of the premises.

**8. USE OF PREMISES:** The premises shall be occupied solely for residential purposes by Lessee and those persons listed in the Application for the Lease. Neither Lessee nor any persons residing with or visiting Lessee shall suffer, perform or permit any act or practice that may damage the reputation of the Building or be injurious or disruptive to the Building and operation thereof, or disturbing to other tenants, be illegal, immoral, or increase the rate of insurance on the Building. Lessee shall be responsible for the conduct of all persons residing with, or visiting Lessee.

**9. SUBLET OR ASSIGNMENT:** Lessee shall not sublet the premises or any part thereof, nor assign this Lease, without, in each case, prior written



# OFFICE OF THE ATTORNEY GENERAL
## STATE OF ILLINOIS

**Lisa Madigan**
ATTORNEY GENERAL

September 12, 2003

Joseph P. Galvin
Chicago Housing Authority
77 West Jackson Blvd.
Chicago, IL 60604

Re: Kellie Watson; 01-CV-2984

Dear Mr. Galvin,

My office has been asked to provide an emergency referral letter on behalf on Ms. Kellie Watson in support of her efforts to obtain relocation assistance through your auspices. Our records indicate that Ms. Watson filed an application for compensation pursuant to the Illinois Crime Victims Compensation Act on March 21, 2001. On September 10, 2001, the Illinois Court of Claims issued an opinion and order finding that Ms. Watson had been the victim of a violent crime as defined by the Act and awarded her compensation for medical , hospital, counseling and lost wages.

On September 20, 2001, Ms. Watson petitioned the Court of Claims to reopen her case in order to submit evidence of additional pecuniary loss. The Court awarded additional lost wages to Ms. Watson. With her second award, Ms. Watson received the total amount compensable under current law and accordingly, is ineligible to receive additional funds for losses associated with Claim No. 01-CV-2984. The Crime Victims Compensation Bureau has not received an application from Ms. Watson pertaining to subsequent crimes.

I hope this letter is of assistance. Should you require any further information, please feel free to contact me.

Sincerely,

Elizabeth A. Vitell
Assistant Director
Crime Victims Services Bureau
Direct Line 312-814-5998



U.S. Department of Housing and Urban Development
Regional Director
Region V

OCT 2 3 2002

Kellie Watson
C/O Reginald Hawkins, President/Owner
R.A.H. Computer Services
8026 S. Fairfield Avenue
Chicago, IL 60652

Dear Ms. Watson:

SUBJECT:  Help Request

President George W. Bush received the letter dated July 15, 2002, written on your behalf by Mr. Reginald Hawkins. Although the legal issues outlined in the letter are outside our jurisdiction, the Department of Housing and Urban Development (DHUD) was asked to respond to you because it administers federal programs that provide assistance on housing and homelessness.

In your telephone conversations with James Sutton, Operations Specialist on October 9, 2002, and Beverly Bishop, Deputy Regional Director, Midwest, on October 21, 2002, you provided clarifications of Ms. Watson's circumstances and faxed a copy of the application for Section 8 Housing Assistance dated December 13, 2002.  We reviewed the information provided and contacted the Housing Authority of Cook County 312-939-0742.  They checked the status of Ms. Watson's application and informed us that due to the volume of applicants in the years 2000, 2001 and 2002, it might not be until the year 2004 that Ms. Watson's is notified that her application would be placed in the eligibility pool. As a result, there is no possibility that a voucher will be issued prior to the proposed eviction. We understand and empathize with your concern. The majority of applicants for Section 8 Vouchers also have exigent circumstances. To ensure that all applicants receive fair and equitable treatment, the lists are maintained in the order the application is received. The DHUD cannot direct or effect changes to the order of the lists.

In conducting the research to ascertain where Ms. Watson was on the list, we were also informed that Section 8 Voucher's issued by the Housing Authority of Cook County cannot be used at an address in the City of Chicago.  The Housing Authority of Cook County vouchers may only be used in the jurisdiction of the Housing Authority where it was issued. In some cases, the various Housing Authorities have agreements in place that would allow use of vouchers outside the Housing Authority's designated jurisdiction. However, that circumstance does not apply in a case where the voucher has not yet been awarded.

To assist you in helping Ms. Watson to secure lodging and possible income, we recommend that Ms. Watson contact the Office of Social Security Administration at 1-800-772-1213 to determine if she is eligible for Social Security Benefits. If Ms. Watson is still unemployed, she might also want to consider applying for Public Assistance for herself and her son through the Illinois Department of Human Services. They may be contacted at 1-800-252-8635.

Thank you for your inquiry and concern. We regret we could not be of more assistance. However as discussed with Ms. Bishop on October 22, 2002, and as previously stated, the majority of applicants have extenuating circumstances, and are in urgent need of assistance. To ensure that applicants receive the assistance that is available, neither the DHUD nor the Housing Authority is able to adjust the order of the waiting lists

If you have any questions or need further clarification, please contact Beverly Bishop of our staff at 1-312-353-6236, extension 2139.

Sincerely,

Joseph P. Galvan
Regional Director, Midwest

PETER G FITZGERALD

# United States Senate

WASHINGTON, DC 20610

September 26, 2003

Ms. Regina Hawkins
8026 South Fairfield Avenue
Chicago, Illinois 60652

Dear Ms. Hawkins:

Thank you for contacting my office regarding Ms. Kellie Watson
and her son matter.

I have forwarded your letter to the appropriate agency listed
below.

Mr. Joseph Galvan
Acting Secretary's Representative
Department of Housing and Urban Development
77 West Jackson Boulevard
Chicago, Illinois 60604

If in the future you require assistance with any other matter
involving the federal government or a federal agency, please do
not hesitate to contact me.

Very truly yours,

Peter G. Fitzgerald
United States Senator

PGF/mpb

# THE WHITE HOUSE

### WASHINGTON

October 16, 2003

Kellie R. Watson
8026 South Fairfield Avenue
Chicago, Illinois 60652-2718

Dear Kellie:

Thank you for contacting President George W. Bush for assistance with agencies of the Federal Government. I am responding on behalf of the President.

The White House is sending your inquiry to the Department of Housing and Urban Development and the Department of Justice, which will review your correspondence. These agencies have the expertise to address your concerns. They will respond directly to you, as promptly as possible.

The President sends his best wishes.

Sincerely,

Desiree Thompson
Special Assistant to the President
and Director of Presidential Correspondence

PETER G. FITZGERALD
ILLINOIS

# United States Senate

### WASHINGTON, DC 20510

October 17, 2003

Chicago Department of Human Services
Diane Brantley
829 West 119th Street
Chicago, IL 60643

Dear Ms. Brantley:

I have received an inquiry from a constituent, Ms. Kellie R. Watson, regarding entering the Shelter Plus Care Program.

Because this inquiry falls within the jurisdiction of your agency, I am forwarding this inquiry to you. I would request that your agency respond directly to the constituent. Please give Ms. Watson's application to the Shelter Plus Care Program the fullest consideration possible.

Your attention and assistance in this matter are greatly appreciated.

Very truly yours,

Peter G. Fitzgerald
United States Senator

PGF/mpb

Enclosure



**Bob V. Walsh**
10/20/2003 04:47 PM

To: Maurice J. McGough/FHEO/CHI/HUD@HUD
cc:
Subject: Request for assistance from homeless crime victim Kellie Watson per Attorney General Lisa Madigan's office

Maury: as we discussed a few minutes ago, I have been trying to pursue a request which was forwarded to our office through Regional Director Galvan's office last month, and I have essentially come full circle right back to the Department after conferring with several other agencies. Here are the facts of the case:

- Ms. Kellie Watson and her 13-year old son are homeless; Ms. Watson is disabled. They are at present staying with a friend but reportedly all three of them will be evicted by her friend's landlord if Ms. Watson and her son do not find an alternative living arrangement by November 1, 2003 (eleven days from now.)

- Mr. Galvan's office received an emergency request for relocation assistance from Elizabeth Vitell, Assistant Director of the Crime Victim's Bureau at the Illinois Attorney General's Office in mid-September. Some time thereafter, the request was forwarded to the Fair Housing Office here in Chicago, and to me.

- I contacted CHAC, Inc. and after speaking with several persons there, I was referred to the Chicago Housing Authority.

- The person with whom I spoke there, Mary Billingsley (312-742-6127,) related that the office within HUD from which these types of requests customarily emanate is our Office of the Inspector General (OIG).

- I spoke with Ray Espinosa at the OIG earlier today. He stated that the only circumstances under which OIG makes such housing referral requests is if the individual concerned is involved in an ongoing investigation with his office. Since that is not the case in this instance, his office's involvement is not warranted.

The above circuitous route essentially brings me back to the Department. It would seem that since the OIG will not make such a request, it should instead emanate from Mr. Galvan's office. I have had several extensive conversations recently with Ms. Watson's advocate, Reginald Hawkins (W: 773-737-3691; C: 773-419-3153.) Mr. Hawkins told me this morning that Ms. Watson has found potential housing but that he needs to provide information regarding the source of the rental funds to the potential landlord. I will walk the information that we have received up to Mr. Galvan's office right now in hopes that this matter can be handled expeditiously. Thanks very much.


TO: REGINALD HAWKINS

FROM: BOB WALSH, HUD

April 3, 2002

Mr. Gonzalez,

Here's the list you requested from the

Crime Victims Compensation Order.

$ 15,363.60
$ - 1,400.00   Public Storage (14 mths.)
$ 13,963.60
$ - 7,000.00   Rental Cars (Thrifty, Nationwide) insurance
$ 6,963.60
$ - 1,413.00   GAS
$ 5,550.60
$ - 2,300.00   Motels (10 Motels + Hotels)
$ 3,250.60
$ - 1,200.00   Clothes, Shoes (Kyle + Kellie)
$ 2,050.60
$ - 800.00   food
$ 1,250.60
$ - 950.00   cell phone
$ 300.60
$ 180.00   Calling cards
$ 120.00
$ - 120.00   bus cards (Kyle + Kellie)
- 0 -

Any questions, Please feel free to call.
"Thank You" for your help.

Sincerely,

*[signature]*

4-302

Subscribed and sworn to before me

this _3rd_ day of _April_ 20_02_
at Chicago, County of Cook, State of Illinois.

Notary Public _[signature]_

OFFICIAL SEAL
CARMEN RIOS
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 4-27-2003



City of Chicago
Richard M. Daley
Mayor

Chicago Department
of Human Services
Ray Vàzquez
Commissioner

North Area Sheridan Office
4740 North Sheridan Road
Chicago, Illinois 60640
(312) 744-2580

(TT/TTD)
(312) 744-6189
(FAX)
(312) 744-3192

March 5, 2002

CHAC
Section 8
626 W. Jackson
Chicago, Ill. 60661

To Whom It May Concern:

Ms. Kellie R. Watson, is seeking Sect 8 housing assistance at this time.
Ms. Watson testifies that she was a victim of crime during the year 2000 and
still has legal matters pertaining to that incident. Ms. Watson has received
services from the Department of Human Services during the year 2001, and
is in need of safe permanent housing.

Please assist this client and her 12 yr old son, Kyle Watson, with housing
services.

I can be reached at (312) 744-2660 If you have any questions.

Thank You for your consideration.

Joan Fabiano
District Manager
North Area
Human Services Center

JF:jf

CC: Kellie Watson
     File

# DHS

**Illinois Department of Human Services**

580499620403 - 1

Connection Number

State of Illinois
Department of Human Services
**REFERRAL FORM**

UPTOWN LOCAL OFFICE
2112 W LAWRENCE AVE
CHICAGO                    IL
60625

REFERRED FOR:

Office Stamp/Address

Housing

### Basic Needs/Housing

Appointment Status: **Walk-In**

REFERRED TO: **CHICAGO DEPT OF HUMAN SERVICES-NORTH AREA**

| | |
|---|---|
| Show up by | Date: **03/14/2002**  Time: **\*:\*\* \*\*** |

Address: **4740 N SHERIDAN**

**N/A**

City: **CHICAGO**          St: **IL**   Zip: **60640-0000**

DATE:   **03/04/2002**

Contact: **Ms JOAN FABIANO**

Phone: **(312)744-2580**      Ext. **None**

## CASE INFORMATION

Case Name: **N/A**   *Kellie Watson*

Address: **PO BOX 18413**

City: **CHICAGO**

Case Number: **N/A**   *0420Y-501306*

Zip Code: **60618 - 0000**

Home Phone:

Message Phone:

Number in Household:

Person Being Referred: **KELLIE R WATSON**

DHS Client? **Pending**

Date Of Birth:   **03/31/1966**

Social Security Number:   **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**

Gender: **Female**

Relationship to Case Name:

Referred person receives the following services:

TANF Months Used:

Special Needs:

Results from Basic Skills Testing:  Reading: .      Math: .      Other: .      Date of Test: **\*\*/\*\*/\*\*\*\***

## REFERRED TO/USED BY

DHS Employee Name:   **J.GONZALEZ**

Caseload Number:   **M6**

Comments:

## TO BE COMPLETED BY THE REFERRAL AGENCY

Please check as many actions as appropriate

Agency Action:

☐ Client Assessment Completed

☐ Client Placed on Waiting List

☐ Client Service Initiated

☐ Specify Service:

☐ No Contact from Client

☐ Referral Rejected, Please Explain

☐ Other Pending Action, Please Explain

Date Returned:

IL444-2151C (R-9-99)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

Michael W. Dobbins                                          Office of the Clerk
     CLERK

        Kellie R Watson
        P.O. Box 18413
        Chicago, IL  60618

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

        Case Number:  1:01-cv-01517

        Title:  Watson v. Hm Depot USA Inc

Assigned Judge: Honorable Harry D. Leinenweber


MINUTE ORDER of 4/5/01  by Hon. Harry D. Leinenweber : The
court's 3/13/01, order denying plaintiff's application to
proceed in forma pauperis and motion for appointment of
counsel is amended, nunc pro tunc, as indicated on the
reverse of this order. Reinstating motion to proceed
without prepayment of fees and affidavit [4-1], Reinstating
motion for appointment of counsel [5-1]. (See reverse of
minute order.) Mailed notice


This docket entry was made by the Clerk on April 6, 2001


ATTENTION:  This notice is being sent pursuant to Rule 77(d) of the
            Federal Rules of Civil Procedure or Rule 49(c) of the Federal
            Rules of Criminal Procedure.  It was generated by ICMS,
            the automated docketing system used to maintain the civil and
            criminal dockets of this District.  If a minute order or
            other document is enclosed, please refer to it for
            additional information.

For scheduled events, motion practices, recent opinions and other information,
visit our web site at www.ilnd.uscourts.gov

Check our web site for CourtWeb--a concise listing of rulings by judges.
Check for rulings on noticed motions.  Also, subscribe to CourtWatch--a free
service--to receive e-mail notification of CourtWeb postings.

To apply for a PACER account, call 1.800.676.6856

## ORDER

Line 10 of the Court's March 13, 2001, Order is stricken. It is replaced with, "Plaintiff's application to proceed *in forma pauperis* is entered and continued. The Plaintiff may supplement the application with the required information by March 30, 2001. Plaintiff's motion for appointment of counsel is entered and continued. Plaintiff may supplement the application with the required information by March 30, 2001."

The last paragraph on the reverse side of the Court's March 13, 2001 Order is stricken. It is replaced with "Ms. Watson must supply the missing information as indicated above. Ms. Watson's application to proceed *in forma pauperis* is entered and continued and her motion for appointment of counsel is entered and continued. If Ms. Watson wishes to proceed with the application and the motion, she must supply the necessary information by March 30, 2001."

 **SOCIAL SECURITY ADMINISTRATION**

Refer To: 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

Office of Hearings and Appeals
200 West Adams Street,
Suite 900
Chicago, Illinois 60606

Date:  **JUL 0 2 2003**

Kellie R. Watson
P O Box 18413
Chicago, IL 60618

## NOTICE OF DECISION – FULLY FAVORABLE

I have made the enclosed decision in your case. Please read this notice and the decision carefully.

### This Decision is Fully Favorable To You

Another office will process the decision and send you a letter about your benefits. Your local Social Security office or another office may first ask you for more information. If you do not hear anything for 60 days, contact your local office.

### The Appeals Council May Review The Decision On Its Own

The Appeals Council may decide to review my decision even though you do not ask it to do so. To do that, the Council must mail you a notice about its review within 60 days from the date shown above. Review at the Council's own motion could make the decision less favorable or unfavorable to you.

### If You Disagree With The Decision

If you believe my decision is not fully favorable to you, or if you disagree with it for any reason, you may file an appeal with the Appeals Council.

### How To File An Appeal

To file an appeal you or your representative, if you choose to appoint one, must request the Appeals Council to review the decision. You must make the request in writing. You may use our Request for Review form, HA-520, or write a letter.

You may file your request at any local Social Security office or a hearing office. You may also mail your request right to the Appeals Council, Office of Hearings and Appeals, 5107 Leesburg Pike, Falls Church, VA 22041-3255. Please put the Social Security number shown above on any appeal you file.

## Time To File An Appeal

To file an appeal, you must file your request for review **within 60 days** from the date you get this notice.

The Appeals Council assumes you got the notice 5 days after the date shown above unless you show you did not get it within the 5-day period. The Council will dismiss a late request unless you show you had a good reason for not filing it on time.

## Time To Submit New Evidence

You should submit any new evidence you wish to the Appeals Council to consider with your request for review.

## How An Appeal Works

Our regulations state the rules the Appeals Council applies to decide when and how to review a case. These rules appear in the Code of Federal Regulations, Title 20, Chapter III, Part 404 (Subpart J) and Part 416 (Subpart N).

If you file an appeal, the Council will consider all of my decision, even the parts with which you agree. The Council may review your case for any reason. It **will** review your case if one of the reasons for review listed in our regulations exists. Section 404.970 and 416.1470 of the regulation list these reasons.

Requesting review places the entire record of your case before the Council. Review can make any part of my decision more or less favorable or unfavorable to you.

On review, the Council may itself consider the issues and decide your case. The Council may also send it back to an Administrative Law Judge for a new decision.

## If No Appeal And No Appeals Council Review

If you do not appeal and the Council does not review my decision on its own motion, you will not have a right to court review. My decision will be a final decision that can be changed only under special rules.

. Kellie R. Watson (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)                                    Page 3 of 7

**If You Have Any Questions**

If you have any questions, you may call, write or visit any Social Security office. If you visit
an office, please bring this notice and decision with you. The telephone number of the local
office that serves your area is (773)687-0325. Its address is 3260 W. Fullerton Ave.,,
Chicago IL 60647-3989.

### SOCIAL SECURITY ADMINISTRATION
#### Office of Hearings and Appeals

#### DECISION

**IN THE CASE OF**                                    **CLAIM FOR**

                                                     Period of Disability,
                                                     Disability Insurance Benefits, and
                                                     Supplemental Security Income
Kellie R. Watson _____
(Claimant)


_____         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 _____
(Wage Earner)                           (Social Security Number)


### INTRODUCTION

On May 7, 2002, the claimant filed applications for Disability Insurance Benefits and Supplemental Security Income payments. Both claims were denied initially and on reconsideration, and a request for hearing was timely filed on December 18, 2002. A hearing was subsequently held on June 20, 2003 in Chicago, Illinois. Appearing and offering testimony at the hearing were the following: claimant, and medical expert Dr. Richard Zaloudek. The claimant alleges disability beginning August 24, 2000. The claimant is not represented.

The general issue is whether the claimant is entitled to a period of disability and Disability Insurance Benefits under sections 216(i) and 223 of the Social Security Act, and whether she is disabled under section 1614(a)(3)(A) of the Social Security Act. The specific issue is whether she is under a disability, which is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

With respect to the claim for Disability Insurance Benefits, there is an additional issue pertaining to insured status. A review of the claimant's earnings record reveals that she has earned sufficient quarters of coverage to remain insured at least through the date of this decision.

## EVALUATION OF THE EVIDENCE

The claimant is a 37-year-old individual with two years of college education and past relevant work as a clerk, administrative assistant, package handler, and sales clerk. She has not engaged in substantial gainful activity at any time since the alleged onset date.

The claimant has the following medically determinable severe impairments: affective disorder and post-traumatic stress disorder. After giving careful consideration to all the documentary evidence, I have concluded that the claimant's depressive disorder and post-traumatic stress disorder meet the criteria of sections 12.04 and 12.06, respectively, of the impairments listed in Appendix 1, Subpart P of the regulations (20 CFR, Part 404).

The evidence shows that the claimant's supervisor allegedly followed her back to her apartment during lunchtime and raped her on April 6, 2000. She told consulting psychologist Dr. Nicolette Puntini that she did not report the attack to the police because of shame and embarrassment. By August, 2000, she abandoned her apartment because she was frightened and fearful that her co-worker would harm her and her son. She lived in a homeless shelter for several months until she was able to move in with a friend. Since the attack she suffered from pronounced psychological distress including depression, intrusive thoughts regarding the past traumatic events, profound feelings of shame, tenseness, and hypervigilance. She was constantly on guard and apprehensive that she would encounter this man again. She had become increasingly withdrawn, isolated, and alienated due to her unease when she was around other people. When she did interact with other people, she admitted that she often became irritated and frustrated very easily. She had a short fuse and became angry at even minor provocations. She was very forgetful and mentally disorganized and had a great deal of difficulty concentrating. She had close friends who had distanced themselves from her because of her preoccupation with the rape. She began psychiatric treatment with Dr. Greenberg in August 2000 and remained in treatment until August 2002. She was placed on several different medications including Klonopin, Zoloft, and Celexa. In August 2002, she began psychiatric treatment with Dr. Neal Spira and therapy with Ms. Dawn Downing. Dr. Spira prescribed Effexor and Risperdal. She had also been attending weekly sessions with a rape counselor at the YMCA since March 2002.

Dr. Puntini reported testing showed claimant to be in the average range of intelligence. She exhibited mild to moderate to medium verbal memory deficits and only marginal immediate perceptual memory deficits. Testing suggested severe anxiety and symptomatology related to post-traumatic stress disorder. She had difficulty remembering and carrying out instructions on a consistent basis due to the interference of her severe psychological problems. Dr. Puntini diagnosed generalized anxiety disorder with symptoms of post-traumatic stress disorder, and a major depressive disorder. She opined that the claimant's fearfulness and paranoid ideation had lead to significant alterations in her ability to live independently and to maintain competitive employment. Her pronounced feelings of shame and worthlessness and depressive ruminations caused significant impairment in her ability to concentrate and sustain attention. Her psychological problems had persisted despite her compliance with psychological treatment. Cognitively she was able to understand instructions and have difficulty remembering and

carrying out these instructions on a consistent basis. Her irritability, apprehensiveness, anxiety and other severe psychological problems would significantly interfere with her ability to maintain occupational relationships with co-workers, supervisors and the general public. In her opinion, the claimant's symptoms militated against her ability to meet the demands of normal, competitive employment on a sustained basis (Exhibit 11F).

In a Psychiatric Review Technique form dated June 7, 2003, Dr. Puntini opined that the claimant's impairments met the severity of sections 12.04 and 12.06 of the Listing of Impairments dealing with affective and anxiety-related disorders, respectively. Her affective disorder was characterized by pervasive loss of interest in all activities, appetite with changes in weight, sleep disturbances, feelings of worthlessness, difficulty thinking and concentrating, and paranoid thinking. Her anxiety disorder under section 12.06 was characterized by motor tension, autonomic hyperactivity, apprehensive expectation, and vigilance and scanning. Dr. Puntini opined that this caused marked functional limitations in social functioning and maintaining concentration, persistence and pace under Criteria B of the listings (Exhibit 13F).

The claimant's treating physician, Dr. Spira completed a psychological impairment report dated June 11, 2003 that contained findings similar to those of Dr. Puntini (Exhibit 14F). Treatment records from the University of Chicago Hospitals document ongoing treatment for post-traumatic stress disorder and depression in the hospital's emotional management program (Exhibits 1F through 7F).

The claimant's testimony was consistent with the medical record. She stated that following the rape she was too ashamed and embarrassed to go to the police or seek psychiatric counseling until August 2000. Since that time despite ongoing psychiatric treatment, she has continued to experience symptoms of depression and severe anxiety because of the rape. The medical expert, Dr. Richard Zaioudek, also confirmed that the claimant's post-traumatic stress disorder and depression were sufficient to meet the severity of sections 12.04 and 12.06 of the Listing of Impairments. He also concurred that the claimant's symptoms demonstrated marked limitations in social functioning and concentration, persistence and pace as stated by Dr. Puntini. I concur and conclude that the claimant is "disabled."

Consideration has also been given the reports of the state agency medical consultants as well as to other treating, examining and non-examining medical sources. Pursuant to Social Security Ruling 96-6p, I have considered the opinions of the nonexamining State agency medical and/or psychological consultants in the file. However, because these are not supported by the aforementioned evidence in the case record and are not consistent with the record as a whole, I do not give them significant weight.

In accordance with a finding that the claimant has been under a disability beginning August 24, 2000, she is entitled to Disability Insurance Benefits on the basis of her application of May 7, 2002 and eligible for Supplemental Security Income payments by virtue of her application of May 7, 2002.

Kellie R. Watson (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)                                        Page 7 of 7

## FINDINGS

After careful consideration of the entire record, the Administrative Law Judge makes the
following findings:

1.  The claimant has not engaged in substantial gainful activity since August 24, 2000.

2.  The medical evidence establishes that the claimant has the following severe impairments:
    affective disorder and post-traumatic stress disorder.

3.  The severity of the claimant's impairment meets the requirements of section 12.04 and
    12.06, Appendix 1, Subpart P, Regulations No. 4 and is expected to preclude her from
    working for at least 12 continuous months.

4.  The claimant has been under a disability, as defined in the Social Security Act, since
    August 24, 2000 (20 CFR §§404.1520(d) and 416.920(d)).

## DECISION

It is the decision of the Administrative Law Judge that, based on the application filed on
May 7, 2002, the claimant is entitled to a period of disability commencing August 24, 2000 and
to Disability Insurance Benefits under sections 216(i) and 223, respectively, of the Social
Security Act.

It is the further decision of the Administrative Law Judge that, based on the application filed on
May 7, 2002, the claimant was disabled under section 1614(a)(3)(A) of the Social Security Act,
beginning August 24, 2000, and that the claimant's disability has continued at least through the
date of this decision.

The component of the Social Security Administration responsible for authorizing Supplemental
Security Income payments will advise the claimant regarding the nondisability requirements for
these payments, and if eligible, the amount and the months for which payment will be made.

EDWARD R. GUSTAFSON
Administrative Law Judge

June 27, 2003
Date

IN THE COURT OF CLAIMS
OF THE
STATE OF ILLINOIS

**FILED**
COURT OF CLAIMS

AUG - 9 2002

Secretary of State and
Ex-Officio Clerk Court of Claims

CLAIM FOR COMPENSATION UNDER THE
CRIME VICTIMS COMPENSATION ACT

IN RE APPLICATION OF:                )
                                     )
KELLIE WATSON,                       )
     Claimant.                       )
                                     )   No. 01-CV-2984
          vs.                        )
                                     )
STATE OF ILLINOIS,                   )
     Respondent.                     )

NOTICE

TO: Kellie Watson
    P.O. Box 18413
    Chicago, Illinois 60618

         Compensation having been paid to the above-named
claimant(s) pursuant to the provisions of the Illinois Crime
Victims Compensation Act, 740 ILCS 45/1, et seq. (1998), you
are hereby notified that the State of Illinois claims a charge
against any verdict, judgment or decree entered, or any money
or property which is recovered on account of the claim, demand
or cause of action against the assailant(s) or any third party
who may be liable in damages.

         You are further notified that if you seek civil
damages from the assailant(s) or any third party who may be
liable you must give written notice to the Attorney General of
the making of said claim or demand or the filing of said suit
for damages.  Neither you nor anyone on your behalf has the
authority to release the charge accruing to the State of
Illinois by any settlement or compromise with any party who
may be liable to you for damages.

                              ENTER:

                              _Andrew M. Raucci_
                              Judge

**FILED**
COURT OF CLAIMS

AUG - 9 2002

Secretary of State and
Ex-Officio Clerk Court of Claims

IN THE COURT OF CLAIMS
OF THE
STATE OF ILLINOIS

CLAIM FOR COMPENSATION UNDER THE
CRIME VICTIMS COMPENSATION ACT

IN RE APPLICATION OF:              )
                                   )
KELLIE WATSON                      )   No. 01-CV-2984
        Claimant.                  )
                                   )

O P I N I O N

KELLIE WATSON, Pro Se
JAMES E. RYAN, Attorney General of Illinois;
CYNTHIA GONZALEZ, Assistant Attorney General.

PER CURIAM

This claim arises out of an incident that occurred on July 27, 2000. The claimant, Kellie Watson sought compensation pursuant to the provisions of the Crime Victims Compensation Act, hereafter referred to as the Act, 740 ILCS 45/1, et seq. (1998).

The claimant was awarded compensation by order of the Court on September 10, 2001. This claim is now before the Court pursuant to a request by the claimant for additional compensation for medical/hospital expenses.

This Court has carefully reviewed its prior Order in this cause, the claimant's request for additional compensation and a supplemental investigatory report by the Attorney General's Office. Based on all of the above, the Court finds:

STATE OF ILLINOIS
COURT OF CLAIMS
630 SOUTH COLLEGE
SPRINGFIELD, ILLINOIS 62756
-----------------------------
(217) 782-7101

ANDREW M. RAUCCI, CHIEF JUSTICE

NORMA F. JANN, JUDGE
ROBERT G. FREDERICK, JUDGE
RICHARD T. MITCHELL, JUDGE
DAVID A. EPSTEIN, JUDGE
FREDERICK J. HESS, JUDGE
RANDY PATCHETT, JUDGE

JESSE WHITE

SECRETARY OF STATE
AND EX OFFICIO CLERK
OF THE COURT OF CLAIMS

ELLEN J. SCHANZLE-HASKINS
DEPUTY CLERK

AUGUST 09, 2002

WATSON, KELLIE R.
P.O. BOX 18413
CHICAGO   IL   60618-0000

RE:  01CV2984 - WATSON, KELLIE R.

Enclosed is a copy of the Court's decision in this case.  If you disagree with this decision, you are entitled to a hearing or review, provided you submit a written request, within thirty (30) days of the date of this letter to the above address.  The request for review should set forth the reason you disagree with this decision.

Payments should be received within eight weeks.  Where applicant is represented by legal counsel, all awards payable to the applicant will be mailed directly to the attorney.  Awards made payable to the medical or funeral provider will be mailed directly to them.

Pursuant to the provisions of the Crime Victims Compensation Act, please direct your attention to the enclosed Notice of Lien in regard to your case.

Sincerely,

Ellen J. Schanzle-Haskins
Deputy Clerk

EJS: CS

CC: ATTORNEY GENERAL - CHICAGO

Opinion No. 01-CV-2984

1.   That on September 10, 2001, the Court of Claims entered an Order awarding the claimant $18,287.57 for medical, hospital and counseling expenses and loss of earnings.

2.   That on December 20, 2001, the claimant requested the Court to reopen her claim for additional compensation for loss of earnings.  The Court granted the claimant's request on February 22, 2002, and referred the claim to the Attorney General's Office for further investigation.

3.   That §2(h) of the Act states that loss of earnings shall be determined on the basis of the victim's average net monthly earnings for the six months immediately preceding the date of the injury or on $1,000.00 per month, whichever is less.

4.   That the claimant's average net monthly earnings for the six months prior to the incident were $1,117.68.  Claimant was disabled and unable to work for a period of 10 months and 15 working days.  Based upon $1,000.00 per day, the maximum compensation for loss of earnings is $10,681.75.

5.   That after considering her previous award, the claimant's loss is now in excess of $27,000.00, the maximum amount compensable under §10.1(f) of the Act.

2

Opinion No. 01-CV-2984

6. That taking into consideration the claimant's original award of $18,287.57, the claimant is entitled to an award based on the following:

|                            | Compensable Amount |
|----------------------------|--------------------|
| Compensable Loss of Earnings | $8,712.43        |

7. That the claimant has complied with all pertinent provisions of the Act and is entitled to compensation thereunder.

IT IS HEREBY ORDERED that the sum of $8,712.43 (EIGHT THOUSAND SEVEN HUNDRED TWELVE DOLLARS AND FORTY THREE CENTS) be and is hereby awarded to Kellie Watson, an innocent victim of a violent crime.

ENTER:

_____
Judge

CONCURRING:

_____ J.

_____ J.

_____ J.

The filing date stamped hereon is the date of this Opinion.

3

IN THE COURT OF CLAIMS
OF THE
STATE OF ILLINOIS

CLAIM FOR COMPENSATION UNDER THE
CRIME VICTIMS COMPENSATION ACT

**FILED**
COURT OF CLAIM

SEP 1 0 2001

Secretary of State and
Ex-Officio Clerk Court of Cl

IN RE APPLICATION OF:                )
                                     )
KELLIE WATSON,                       )
        Claimant.                    )
                                     )
        vs.                          )        No. 01-CV-2884
                                     )
STATE OF ILLINOIS,                   )
        Respondent.                  )

NOTICE

TO:  Kellie Watson
     P.O. Box 18413
     Chicago, Illinois 60618

        Compensation having been paid to the above-named
claimant(s) pursuant to the provisions of the Illinois Crime
Victims Compensation Act, 740 ILCS 45/1, et seq., (1998), you are
hereby notified that the State of Illinois claims a charge
against any verdict, judgment or decree entered, or any money or
property which is recovered on account of the claim, demand or
cause of action against the assailant(s) or any third party who
may be liable in damages.

        You are further notified that if you seek civil damages
from the assailant(s) or any third party who may be liable you
must give written notice to the Attorney General of the making of
said claim or demand or the filing of said suit for damages.
Neither you nor anyone on your behalf has the authority to
release the charge accruing to the State of Illinois by any
settlement or compromise with any party who may be liable to you
for damages.

                                ENTER:

                                _____
                                Judge

Opinion No. 01-CV-2984

1. That on July 27, 2000, the claimant, Kellie Watson, age 34, was a victim of a violent crime as defined in §2(c) of the Act, to wit: Criminal Sexual Assault, 720 ILCS 5/12-13, (1998).

2. That the crime occurred in Chicago, Illinois, and all of the eligibility requirements of §§.1 of the Act have been met.

3. That the claimant seeks compensation for medical/ hospital expenses and for loss of earnings.

4. That after considering insurance and other sources of recovery, the claimant's net compensable loss for medical/ hospital expenses is $2,923.97. To date, the claimant has paid nothing towards this amount.

5. That §2(h) of the Act states that loss of earnings shall be determined on the basis of the victim's average net monthly earnings for the six months immediately preceding the date of the injury or on $1,000.00 per month, whichever is less.

2

Opinion No. 01-CV-2986

6.  That the claimant's average net monthly earnings for the six months prior to the incident were $1,117.68. Claimant was disabled and unable to work for a period of 15 months and 8 working days. Based upon $1,000.00 per month, the maximum compensation for loss of earnings is $15,363.60.

7.  That the claimant has received no reimbursements that can be counted as an applicable deduction under §10.1(e) of the Act.

8.  That the claimant's net compensable loss is based upon the following:

|                                          | Compensable Amount |
|------------------------------------------|-------------------:|
| University of Chicago Physicians Group   |         $2,270.00 |
| University of Chicago Hospitals          |            653.97 |
| Compensable Loss of Earnings             |         15,363.60 |
| Total                                    |        $18,287.57 |

9.  That the claimant's attorney, Theodore Jennings, has filed a civil action on behalf of the claimant, Kellie Watson v. Home Depot, et al., No. 01-CV-01517, filed in the Circuit Court of Cook County, Illinois, as a result of the incident.

Opinion No. 01-CV-2984

10.  That the claimant, by informing the Attorney General's Office of her pending civil suit, has acknowledged her responsibility to further notify the Attorney General of the final disposition of the civil action, pursuant to §87 of the Act.

11.  That the claimant has complied with all pertinent provisions of the Act and qualifies for compensation thereunder.

11.  That pursuant to §18(c) of the Act, the Court may order that all or a portion of an award be paid solely and directly to the provider of services. In the instant case, the Court finds this section applicable and orders that direct payment be made.

IT IS HEREBY ORDERED that the sum of $15,363.60 (FIFTEEN THOUSAND THREE HUNDRED SIXTY-THREE DOLLARS AND SIXTY CENTS) be and is hereby awarded to Kellie Watson, an innocent victim of a violent crime.

IT IS FURTHER ORDERED that the sum of $2,270.00 (TWO THOUSAND TWO HUNDRED SEVENTY DOLLARS) be and is hereby awarded to University of Chicago Physicians Group for the medical expenses of Kellie Watson.

4

Opinion No. 01-CV-2984

IT IS FURTHER ORDERED that the sum of $653.97 (SIX HUNDRED FIFTY-THREE DOLLARS AND NINETY-SEVEN CENTS) be and is hereby awarded to University of Chicago Hospitals for the hospital expenses of Kellie Watson.

ENTER:

_____

Judge

CONCURRING:

_____ J.

_____ J.

The filing date stamped hereon is the date of this Opinion.

5

Case 1:09-cr-01009 Document 1 Filed 03/04/2009 Page 87 of 94

DC METRO POLICE

21. NAME (LAST-FIRST-M.I.)
R.B.S. 10 GUEST

CALLON

NARRATIVE (Describe property or related information — use the business box for additional information only)

SEVENTY # 10 454 IN SEMINARY, VICTIM STATED WHILE GOING HOME ON HER LUNCH TIME, OFFENDER FOLLOWED HER, AFTER BEING TOLD NOT TO DO SO. VICTIM STATED SHE TOLD OFFENDER NOT TO ENTER HER APARTMENT AT ABOVE LOCATION. VICTIM STATED OFFENDER ENTERED HER APARTMENT AND SINCE SHE DID NOT WANT TO MAKE A SCENE, VICTIM STAYED WHILE OFFENDER ENTERED THE BATHROOM...

SEE NARRATIVE FIVE

...while leaving his clothes in the BEDROOM. Victim
stated without permission OFFENDER

Victim stated after the SHOWER going on at work with other co-workers

pushed her down

SHE stated the BED at which time the OFFENDER staying with her at home addresses Victim

stated OFFENDER

TOLD R/O's HE is SEEKING a sexual - Harassment

Victim stated complaint against her OFFENDER (co-worker)

OFFENDER told OFFENDER to leave at least 3 times told her employer. Bart 2333 notified

Victim stated when OFFENDER had finished the 2nd

1st R/O's, Murdowit #813, F##x 6-6172,

Time she was given a shower and helped dress

at V/C Sh Row 1, #813,  F##x 6-6172

THE OFFENDER so she could get away. Victim

whose abode of OFFENDER is UNK at this time.

stated she did not seek medical treatment

BECAUSE SHE "HAD NEVER BEEN violated before"

Victim stated safe HAD NOT responded the
Victim to the police Due to "so much"

| OFFENSE CODE | REV. CODE | UCR METHOD CODE | METHOD ASSIGNED | FOR USE BY BUREAU OF INVESTIGATIVE SERVICES ONLY |
|---|---|---|---|---|

PREPARED BY – SIGNATURE

July 24, 2000

Please accept this statement as my formal grievance with Home Depot and Vic Terrell. I am not really sure where to start with all of this, so I will start at the beginning. I am a single Mother of a ten-year-old son.

I started at Home Depot with a lot of hopes and dreams. I was looking for a career. Home Depot promised to give that if I wanted it. I wanted to work for a company where I could move up. I wanted set goal and complete great accomplishments. I wanted to be employed someplace where I could be proud to say I worked there. I thought I had found it at Home Depot store #1912.

I began at the Special Services Desk in August 1999 and was subsequently moved to the Pro Sales Desk on December 27th. I needed a set Monday through Friday schedule because of my son. I have no family here in Chicago. A set schedule would allow me to take my son to school in the morning and pick him up in the evenings. The Pro Sales Department could afford me that opportunity. I was very excited about the move.

I was asked to handle Pro Sales Credit, in addition to my responsibilities as a regular Pro Sales Associate. This was a new arena for me, so I wanted to get to know my surroundings (customers, procedures, other associates and my manager) and do a good job. On Tuesday, January 11th, my ASM, Vic Terrell, invited me to have coffee with him. We went to Dunkin Donuts after work and discussed my future at Home Depot and the Pro Sales Department. We talked about all the things it would take for me to run my own department and advance to the next level at Home Depot. The conversation was positive and I wanted to establish a good working repoire with my new ASM.

Things in the store seemed to be fine. I was learning Pro Sales and Credit. I was also teaching the Pro Sales Associates procedures that I knew from Special Services. On January 26th, over lunch, Vic asked me where was I last night because he had come by my apartment. He described to me the front entrance of my building. I was uncomfortable. I asked him what was he doing at my apartment? His reply was, he was in the area .

Also in January, Vic began to invite me to lunch. During several of our lunches together, we discussed what happened when a co-worker, Jenny Vargas and her two sons lived with me for three months (October — December). With my schedule being so irregular at Special Services I needed some help with my son. I just could not leave him home alone. Jenny was looking for a place to stay so we agreed to help each other. We normally worked different schedules and one of us was able to be home with the children at all times. Bob Gill, then ASM of Building Materials came to my home in a Home Depot Load-N-Go truck with Jenny s belongings and she moved in. The only down side was Jenny was involved in an intimate relationship with Bob. That was not a comfortable situation because I knew he was married and had children. Bob would come to my home during his lunch breaks, before, and after work. He would visit my home whenever he felt like it. At that time neither Jenny nor myself had a car. Bob would let us use his

burgundy Buick to go to the grocery store and to get to and from work. He also told us that he had been to Jay T's (Store Manager of 1912) house on several occasions, so he would be able to help us both advance because he would be in our corners to make sure we would be recognized for our hard work. His wife became aware of his visits to my home when Bob received a ticket for being parked in my alley between midnight and 5:00am. Shortly thereafter Bob's car began to be vandalized. I told Bob that his wife probably had something to do with the vandalism. It was at this time that I stopped driving his car and told him not to come over anymore. I no longer felt comfortable with the situation and I felt that my son and my safety were in danger.

My Mother was visiting from Santa Cruz California in November. It was my son's birthday and the Thanksgiving holiday. My mother had the opportunity to meet Bob as well as John Sffereno at my home. I discussed the situation of Bob's visits and my mother agreed that it was inappropriate and potentially dangerous. Upon his next visit, I again asked him not to return to my home. His reply was, Jenny pays half of the rent and I help her and I should be able to come her. He also accused me of attempting to control Jenny. So I told Jenny that if Bob continued to visit she would have to move. In addition, John Sffereno, ASM of Hardware had also entered into some sort of relationship with Jenny. John would come over to my house, buy us groceries and take Jenny and her children shopping. He had no idea that Jenny was involved with Bob. As you can see, there was an extremely high volume of in and out of my home. Then Co-Store Manager, Don Davis, invited Jenny to his new condo for drinks. Jenny explained that she was at my house and he asked to bring me along. I told her that I did not feel that it was appropriate and we did not go.

By this point, I had had just about enough! Two Assistant Managers are in and out of my home and now a Co-Store Manager of our store wants to invite us over for drinks and the tension climaxed. So on December 29th, Bob again pulled up with a Home Depot Load--N--Go truck and moved Jenny and her two sons out of my apartment.

I was very relieved to have my home life finally return to normal. Vic and I continued our lunches. During one luncheon date I asked should I talk to someone about the Jenny and Bob situation. Vic's response was she's the Department Head of Tool Rental now so stay out of it. Vic and I regularly discussed store gossip during our lunches. January 27th was the first time he kissed me. I asked him why he kissed me. He said that he was attracted to me, but he had a girlfriend and that he was in the process of getting a divorce.

Through the month of February and March. He continued to flirt with me. However, would display a very dark side. Vic would yell and it would not matter who was around, co-worker or customer. He was also very physical. It would be nothing for Vic to grab your arm and hurry you somewhere he wanted you to go. He would yell Make it Happen. We discussed his behavior over lunch. I would ask him to never speak to me in that tone again and to stop putting his hands on me like that. He would be very apologetic and say that he was under a lot of pressure from the higher ups and that he was having personal problems with his divorce. He also promised me that he would work on improving his behavior. Because of his bad disposition and my uneasiness with his mood

swings. our lunches slowed down from three or four times a week to once a week. This was also during the time when I had my first hundred thousand-dollar customer. Midland Distribution & Construction. The customer s orders were either wrong merchandise or not ready even after he would call in two hours prior to pickup. I did not feel like I received any support with this order from Vic. He wasn t trying to help me become a better sales person. He wanted to know what the customer and I was talking about. Vic always seemed to have a problem with my customer. Mr. Jenkins the buyer for Midland required a lot of my attention. Vic did not seem to like that. Mr. Jenkins expressed to me that he felt as if he wasn t receiving good customer service because he was a man of color. I did everything I could to make him feel at ease. This was my first major credit customer. He was approved and I made the sale! I was very excited and wanted things to go smoothly, but they didn t!

On April 6th, I was on my way to lunch. Vic was in the parking lot sitting in his car. He gave me a very strange look and checked his watch. So, I stopped to inform him that I was off the clock and was going home for lunch. Vic said. He was coming with me. I said, Yeah right. Why he would want to come to my home was the question in my mind. So I drove off. As I was riding West on Elston I noticed that Vic was indeed following me, I motioned to him out of my window and he pulled up next to me. I asked him again, Where are you going? His reply, Your place . I did not respond. . I had a headache; I was on my menstrual cycle. I had run out of pads, and my pants were soiled. I just wasn t having a good day. So, I simply drove home and parked my car in front of my apartment. Vic pulled up, parked, and got out of his car. I told him he could not take it upon himself to come to my home uninvited. I also explained to him that I was on my period and did not feel well. My landlord, who lives in the building, was coming outside and saw us. Since my landlord had asked me not to have so many visitors I moved into the doorway because I didn t want my landlord to say anything. I introduced them and Vic followed me. I went into my apartment. Vic came in and immediately fondled my breast. I said, No Vic, I m on my period and I m going to be late returning from lunch. His reply was to call work and let them know that you have a menstrual related situation, we receive them all the time . I didn t know what to do. I had no choice. The last thing I needed was a no call -- no show. So I called Home Depot as instructed and I spoke to Kevin, then ASM of Kitchen/Bath. I told him that I had an emergency situation and that I would be unable to return to work that day. Kevin said O.K.   As soon as I hung up the phone, Vic was all over me. I told him that I needed to wash myself and change. I wanted to buy myself some time to think. I grabbed some clothes and went to the bathroom to obtain my composure. I was nervous, sweaty, had a headache and was bleeding all at the same time. I ran the shower, hoping that he would leave so he would not be late returning to work. I had just started to wash myself and I looked up and there Vic stood. He had taken off all of his clothes and entered the shower. He began to touch me. I was extremely embarrassed and confused. What do I do now? Was the only thought that was running through my head. I still had not completely washed myself or fully grasped what was really about to happen to me. I have always felt self-conscious about my weight and my body and I had not anticipated him entering the bathroom. I had made certain that the door was closed. I still had soap all over and I could smell the blood running down my legs. I told him that I needed to rinse off and get out.

I rinsed off and turned to make my way out of the shower. He pulled me to him and penetrated me from behind. He did not have a condom on and he did not ask me. After he ejaculated inside of me, he withdrew. I felt dirty so I washed myself again and immediately got out of the shower. I could not believe what was happening. I grabbed my towel and went into my bedroom. His clothes were all over the floor. When I looked up, there he was standing in front of me. We exchanged no words. At this point, everything was happening so fast. I did not know what to say. He walked up to me and pushed me back on the bed and straddled my body. I was numb. All I could hear was the radio playing in the background. He removed my towel and tried to kiss me on the lips. I turned my head so he kissed my neck and then my breasts. I had no desire to kiss him. He attempted to perform oral sex on me and I pushed his head away and repeated, I am on my period! So he again put his penis in me and ejaculated inside of me. I was humiliated as I thought that the sight of menstrual blood was turn him off, but it didn't. He turned me over and began to penetrate me from behind. When he ejaculated again he laid back on the bed. He pulled me toward his penis wanting me to perform oral sex on him. I took the towel and wiped the blood from his penis. I began to perform oral sex, and wanting him to leave. I pulled away because I could no longer tolerate the thought of the menstrual blood and the smell. He was still aroused and excited so he got on top of me again he began sexual intercourse until he ejaculated again. I felt like a whore. I was humiliated.

He lay next to me and said nothing. I looked at the clock and it was 5:15p.m. I told Vic that he had to go because I had to pick up my son from school. I jumped up and ran the bathroom where I took another shower, alone. When I was done Vic took a shower. After his shower Vic began dressing slowly and I helped him get his clothes on to expedite his departure. We walked to our cars and I told him, This was horrible. He shrugged his shoulders and said, Oh well. I got into my car and drove away.

I did not know what to do. I did not know who I could tell. Therefore I chose to block out the entire incident and never speak of it. I avoided any one-on-one contact with Vic. He attempted to continue our lunches and I declined. One afternoon in the parking lot, Vic asked me where I had been. I told him that I was returning from lunch. He asked when he could return to my house because he did not have the opportunity to perform oral sex on me. I told him, Never. I also told him that he had become very hostile toward me and this is what happens when you have sex with someone you work with. He told me that it was a forbidden subject. Over the next few weeks I noticed his increasing anger toward me. But I had NO intention of proceeding with a sexual relationship with him.

Everything came to a head on July 13th 2000 when I was assisting a customer Deborah Crawford, who is also a friend of mine. She is in the processing of purchasing investment properties and needed assistance with credit and rehab materials. She came in with a list of repairs and had questions in addition to returning batteries. Before she left I gave her applications for commercial, consumer, and home improvement loans. I also gave her information on our new Install Sales Program. She asked me to walk her to her car. She had her seven-year-old son with her. I continued to explain the various

programs. When reached her car which was located at the back of the parking lot. She insisted that she drive me back to the front of the store. I am allowed as well as asked to go to customers homes and businesses to take care of credit issues. I did not think it was inappropriate to accept the ride. Vic and Ford, the new department head of Pro Sales walked by and I told her who they were. Vic walked up to car and asked me, What are you doing, are you on the clock? Before he gave me the opportunity to explain he told me to clock out and go home. I was embarrassed and shocked. I found his tone to be inappropriate. Ms. Crawford tried to explain that she was a customer and he was rudely uninterested in what she had to say.

I told her that she was wasting her time. She was visibly upset and angry. She attempted to explain again and he dismissed her. I went into the store and gathered my belongings. Vic and Ford called me into the manager's office to sign a write-up, which I refused to sign. He told me to consider myself suspended. I have never been suspended in my life but I felt certain that this all was indirect punishment for not continuing a sexual relationship with him. I left the office and attempted to call Jay Owens and Ron Johnston. Neither was available so I left messages on their voicemail. I also spoke with Jeannie, and told her about the incident. I was upset and crying and she told me to talk to the store manager, Al Stermer, at that time. I clocked out and was leaving the store when I saw Al Stermer. I tried to discuss the incident with Al and he told me that he needed to talk to his manager, first. I knew at that point that he would not be helpful to me. I drove to my home feeling embarrassed, humiliated, and degraded.

I went into the store on Friday, July 14th to speak with Al Stermer regarding my suspension. He agreed Vic. It was then I learned that my schedule of Monday through Friday with weekends off and hours of 8:00am to 5:00pm had suddenly been changed to working on the weekends with a two week days off. Vic is aware that I have a small son and of the great inconvenience the schedule change would cause. I took this as a direct retaliation. I immediately called Jay Owens and was informed that he was in a training class.

Jay Owens returned my call and assured me that retaliation was not an option. On the 19th of July Vic told Gaye (computer room) to call me and inquire when I would return to work. I told her that I was off on Tuesday and Wednesday (according to my new schedule). I was scheduled to return on Thursday, July 20th and I informed her that I would return on Thursday. She informed me that my name had been crossed off of the schedule. I did not understand because I had talked to Mary, the ASM, on the 17th when I called in sick. I also told Mary that I would return to work on Thursday as newly scheduled. I felt that I was being harassed by all of the phone calls and questions because I called corporate to report the incident.

I called the store on July 19th to find out if I was scheduled to work or not. I spoke with John SIfereno who told me that I was not on the schedule. He told me to come in because Jay T was back in the store.

On the 21st, I told Jay T about everything; the sexual encounter with Vic, Jenny and Bob s situation, and Vic s poor treatment of me. I was very upset and was completed out of control. I felt ashamed to disclose this events. He suggested that I talk to someone, and his suggestion was Mary. I told him that I did not trust Mary.

On Saturday the 22nd I went to the store to drop off my time cards per Jay T s request. I asked him if I could talk to Michelle from LPS. He was unable to contact her. I felt that it would be easier to talk to another woman, as I felt so degraded trying to explain things to Jay T. He was also the person who hired me so I felt as if I had disappointed him in some way. He will never view me in the same way.

The sexual situation with Vic Terrell is the most embarrassing, humiliating and degrading thing that has ever happened to me. Vic Terrell has used his position of authority in a most inappropriate, unethical, and unprofessional manner. Vic has used every opportunity to punish me for not sleeping with him again. Upon exposing this sordid incident I fear for my safety. Vic is very aggressive and physical. I feel that once he knows that I have told, he will attempt to harm or injure me. All of the managers mentioned in this grievance know where I live and will not be happy with this disclosure. Any one of them can seek revenge.

I feel certain that my chance for a successful career with Home Depot has ended. This should not have happened to me. I should not have to choose between my values and my career. No woman, NO ONE, should ever have to make that choice. This cannot ever happen again.

Regretfully,

Kellie R. Watson

Cc:    Arthur Blank
       Mark Baker
       Ron Johnston
       Jay Owens
       Jay Tippeconnic

Subscribed and sworn to before

this ___ day of _____, 19___
at Chicago, County of Cook, State of Illinois

Notary Public

OFFICIAL SEAL
ROBERT WOLFBERG
Notary Public, State of Illinois
My Commission Expires 2/11/2001